## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FOOD FOR THOUGHT CATERERS CORP., on behalf of itself and all others similarly situated,** | |
| **Plaintiff,** | **No. _____** |
| **v.** | |
| **THE HARTFORD FINANCIAL SERVICES GROUP, INC. AND SENTINEL INSURANCE COMPANY, LTD.,** | **CLASS ACTION COMPLAINT** **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff Food for Thought Caterers Corp., on behalf of itself and all others similarly situated, by and through its counsel, hereby complains and alleges as follows:

### Nature of Action

1.      In response to the global COVID-19 pandemic, civil authorities in New York and throughout the United States issued orders requiring residents to stay at home, shutting down restaurants and other businesses deemed non-essential, and prohibiting gatherings of large groups.

2.      While necessary to slow the spread of the novel coronavirus, these orders have had a devastating effect on businesses, such as Plaintiff's catering business, which has been forced to suspend business operations.

3.      To protect from losses caused by situations like this, Plaintiff and other similarly situated Class members obtained insurance policies from Defendants that included business interruption coverage. In breach of the insurance obligations Defendants undertook in exchange for premium payments, which Plaintiff and Class members paid, Defendants have wrongfully

denied Plaintiff's and Class members' insurance claims arising from the interruption of Plaintiff's and Class members' businesses.

## Jurisdiction and Venue

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) insofar as the amount of controversy exceeds $5,000,000, the Class and Sub-Class (defined below) are comprised of at least some persons who are citizens of states different from Defendants, and the Class consists of at least 100 members.

5.      This Court has personal jurisdiction over both Defendants because Defendants transact business within New York, and Plaintiff's causes of action arise out of those contacts. Defendants purposefully availed themselves of the opportunity of conducting activities in the state of New York by marketing their insurance policies and services within the state, and intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a District where a substantial part of the events or omissions giving rise to the claim occurred, a substantial part of property that is the subject of the action is situated in this District, and Defendants are residents of this District for the purposes of venue pursuant to 28 U.S.C. § 1391(c).

## The Parties

7.      Plaintiff Food for Thought Caterers Corp. ("Food for Thought" or "Plaintiff"), is a corporation organized under the laws of New York with its principal place of business in New York, New York. Food for Thought operates a full-service catering business serving the New York City area from a 7,000 square foot office at 130 W. 25th Street, New York, New York.

8.      Defendant The Hartford Financial Services Group, Inc. ("Hartford Financial") is a corporation organized under the laws of Delaware with its principal place of business in Hartford, Connecticut. Hartford Financial owns subsidiaries, directly and indirectly, that issue, among other things, property insurance.

9.      Defendant Sentinel Insurance Company, Ltd. ("Sentinel") is a corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. Sentinel is a subsidiary of Hartford Financial and is duly qualified and licensed to issue insurance in the State of New York and other states. Defendants Hartford Financial and Sentinel are collectively referred to herein as Hartford or Defendants.

**<u>Factual Allegations</u>**

***The COVID-19 Pandemic***

10.     In December 2019, a novel (new) coronavirus known as SARS-CoV-2 was first detected in Wuhan, Hubei Province, China, and which caused an outbreak of a disease now known as COVID-19.

11.     The coronavirus causing COVID-19 is thought to spread mainly from person to person, primarily through respiratory droplets produced when an infected person coughs or sneezes.[1]

---

[1] *See generally* CDC Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/faq.html (last visited April 29, 2020).

12.     The coronavirus spread globally, and on January 30, 2020, the World Health Organization designated the COVID-19 outbreak as a Public Health Emergency of International Concern.[2]

13.     On January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19.[3]

14.     On March 13, 2020, the President of the United States issued a proclamation that the COVID-19 outbreak in the United States constitutes a national emergency.[4]

15.     To date, there have been more than 1 million confirmed cases of COVID-19 in the United States, including more than 295,000 in New York State and more than 160,000 in New York City. As a result of COVID-19, there have been more than 57,000 deaths in the United States, including more than 22,000 in New York State and more than 17,000 in New York City [5]

---

[2] https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov).

[3] Press Release, Secretary Azar Declares Public Health Emergency for United States for 2019 Novel Coronavirus (Jan. 31, 2020), available at https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html.

[4] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[5] *See* Johns Hopkins Coronavirus Resource Center, available at https://coronavirus.jhu.edu/map.html (last visited April 28, 2020); N.Y. Dep't of Health COVID-19 Tracker, available at https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last checked April 28, 2020); New York City Dep't of Health COVID-19: Data, available at https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last visited April 28, 2020).

*Closure Orders Issued by Civil Authorities in Response to the COVID-19 Pandemic*

16.      In response to this public health crisis, every state made an emergency declaration by March 16, 2020. Moreover, civil authorities in nearly every state also ordered some form of social distancing measures, including stay-at-home orders (ordered by all but six states), restrictions on large gatherings (ordered by all but three states), and orders closing or restricting service at restaurants and bars except for takeout and delivery (ordered by all but one state).[6]

17.      In New York, on March 7, 2020, Governor Andrew Cuomo declared a state disaster emergency for the entire state in effect until September 7, 2020.[7]

18.      On March 12, 2020, Governor Cuomo signed Executive Order 202.1, which, among other things, ordered that any large gathering or event for which attendance is anticipated to be in excess of five hundred people be cancelled or postponed for a minimum of thirty days. Executive Order 202.1 also required that any place of business or public accommodation, and any gathering or event for which attendance is anticipated to be fewer than five hundred people, operate at no greater than 50% occupancy, and no greater than 50% of seating capacity, for thirty days effective on Friday, March 13, 2020.[8]

19.      On March 16, 2020, Governor Cuomo signed Executive Order 202.3, which amended Executive Order 202.1 to require that, until further notice, any large gathering or event at any location in New York State be cancelled or postponed if more than fifty persons are expected in attendance. Executive Order 202.3 also ordered that any restaurant or bar in the state

---

[6] Kaiser Family Foundation, *State Data and Policy Actions to Address Coronavirus*, available at https://www.kff.org/health-costs/issue-brief/state-data-and-policy-actions-to-address-coronavirus/ (last visited April 28, 2020).

[7] https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york.

[8] https://www.governor.ny.gov/news/no-2021-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

of New York cease serving patrons food or beverage on-premises effective at 8 p.m. on March 16, 2020 until further notice.[9]

20.     On March 18, 2020, Governor Cuomo signed Executive Order 202.6, which required, among other things, that any non-essential business reduce its in-person workforce at any work locations by 50% no later than March 20, 2020 at 8 p.m.[10]

21.     On March 19, 2020, Governor Cuomo signed Executive Order 202.7, which, among other things, amended Executive Order 202.6 to require that any non-essential business reduce its in-person workforce at any work locations by 75% no later than March 21, 2020 at 8 p.m.[11]

22.     On March 20, 2020, Governor Cuomo signed Executive Order No. 202.8, which ordered, among other things, that effective at 8 p.m. on Sunday, March 22, 2020, all non-essential businesses statewide would be closed.[12]

23.     For the purposes of the Executive Orders 202.6 and subsequent orders, non-essential businesses include, among other things, "Any large gathering or event venues, including but not limited to establishments that host concerts, conferences, or other in-person

---

[9] https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[10] https://www.governor.ny.gov/news/no-2026-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[11] https://www.governor.ny.gov/news/no-2027-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[12] https://www.governor.ny.gov/news/no-2028-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

performances or presentations in front of an in-person audience" and "Any dine-in or on-premise restaurant or bar service, excluding take-out or delivery for off-premise consumption."[13]

24.     On March 23, 2020, Governor Cuomo signed Executive Order No. 202.10, which ordered that "Non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations or other social events) are canceled or postponed at this time."[14]

**Covered Losses Under the Policy**

25.     Defendants issued Plaintiff's Spectrum Business Owners Policy No. 13 SBA IN6384 SB for the policy period between September 20, 2019 to September 20, 2020 (the "Policy").

26.     Parts of the Policy are standardized forms that are used by Hartford for all insureds having applicable coverage.

27.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

28.     Among the coverages provided by the Policy, which is currently in full effect, is business interruption insurance, which, generally, would indemnify Plaintiff for lost income and profits in the event that its business was shut down.

29.     Specifically, Plaintiff's Special Property Coverage Form, Form SS 00 07 07 05, under the Section "Additional Coverages," provides coverage for loss of Business Income as follows:

---

[13] *See* Empire State Development, *Guidance for Whether a Business Enterprise Is Subject to a Workforce Reduction Under Recent Executive Orders* (last updated April 24, 2020), available at https://esd.ny.gov/guidance-executive-order-2026.

[14] https://www.governor.ny.gov/news/no-20210-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

Policy, Special Property Coverage Form § A.5.o(1).

30.     Under this coverage in the Policy, "Business Income" is defined as:

(a)     Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

(b)     Continuing normal operating expenses incurred, including payroll.

Policy, Special Property Coverage Form § A.5.o(4).

31.     Under this coverage in the Policy, "suspension" is defined as:

(a)     The partial slowdown or complete cessation of your business activities; or

(b)     That part or all of the "scheduled premises" is rendered untentantable [*sic*] as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy.

Policy, Special Property Coverage Form § A.5.o(5).

32.     The Policy also provides Extra Expense coverage as follows:

We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means:

(a)     The portion of the building which you rent, lease or occupy; and

(b)     Any area within the building or on the site at which the "scheduled premises" are located, but only if that area services, or is used to gain access to, the "scheduled premises".

(3) Extra Expense means expense incurred:

(a)     To avoid or minimize the suspension of business and to continue "operations":

     (i)     At the "scheduled premises"; or

     (ii)     At replacement premises or at temporary locations, including:

          (aa)     Relocation expenses; and

          (bb)     Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.

(b)     To minimize the suspension of business if you cannot continue "operations".

(c)     (i) To repair or replace any property; or

     (ii)     To research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage o., Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or physical damage. This Additional Coverage is not subject to the Limits of Insurance.

(4) With respect to the coverage provided in this Additional Coverage, suspension means:

(a)     The partial slowdown or complete cessation of your business activities; or

(b)     That part or all of the "scheduled premises" is rendered untentantable [*sic*] as a result of a Covered Cause of Loss if coverage for Extra Expense applies to the policy.

9

(5) Limitation

This Extra Expense Coverage does not apply to:

(a)     Any deficiencies in insuring building or business personal property; or

(b)     Any expense related to any recall of products you manufacture, handle or distribute.

Policy, Special Property Coverage Form § A.5.p.

33.     The Policy also provides Civil Authority coverage as follows:

**q. Civil Authority**

(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

(2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:

(a)     When access is permitted to your "scheduled premises"; or

(b)     30 consecutive days after the order of the civil authority.

Policy, Special Property Coverage Form § A.5.q.

34.     Covered Causes of Loss is defined under the Policy as:

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

Excluded in Section B., EXCLUSIONS; or

Limited in Paragraph A.4. Limitations; that follow.

Policy, Special Property Coverage Form § A.3.

35.     Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities because, among other things, they have been unable to use their property for its intended purpose, and

10

they have been denied access to their property, causing a suspension of business operations on

the premises and the function of their property to be nearly eliminated or destroyed.

36.     The interruption of Plaintiff's and other Class members' businesses was not

caused by any of the exclusions set forth in the applicable Policy.

37.     Plaintiff's Policy does not include any exclusion for losses caused by the viruses,

but includes the following exclusion:

> 2. We will not pay for physical loss or physical damage caused by
> or resulting from:
>
> . . .
>
> **i. Pollution:** We will not pay for loss or damage caused by or
> resulting from the discharge, dispersal, seepage, migration, release
> or escape of "pollutants and contaminants" unless the discharge,
> dispersal, seepage, migration, release or escape is itself caused by
> any of the "specified causes of loss." But if physical loss or
> physical damage by the "specified causes of loss" results, we will
> pay for the resulting physical loss or physical damage caused by
> the "specified cause of loss."

Policy, Special Property Coverage Form § B.2.i.

38.     The Policy defines "Pollutants and Contaminants" as:

> . . . any solid, liquid, gaseous or thermal irritant or contaminant,
> including smoke, vapors, soot, fumes, acids, alkalis, chemicals and
> waste, or any other material which causes or threatens to cause
> physical loss, physical damage, impurity to property,
> unwholesomeness, undesirability, loss of marketability, loss of use
> of property, or which threatens human health or welfare. Waste
> includes materials to be recycled, reconditioned or reclaimed.

Policy, Special Property Coverage Form § G.15.

39.     The Pollution exclusion is not applicable because COVID-19 is not a Pollutant or

Contaminant. Additionally, Plaintiff's and other Class members' losses were not caused directly

or indirectly by any of the actions set forth in this exclusion. Rather, the proximate cause of

11

Plaintiff's and other Class members' losses were precautionary measures taken by their respective states to prevent the spread of COVID-19 in the future.

40.     Beginning in March 2020, Plaintiff was forced to suspend business operations as a result of COVID-19 and the related actions of civil authorities. This suspension, which is ongoing, has caused Plaintiff to suffer significant losses and incur significant expenses.

41.     Plaintiff provided notice of its losses to Defendants consistent with the terms and procedures of the Policy.

42.     Notwithstanding the foregoing, by way of letter dated April 23, 2020, Hartford denied Plaintiff's claim for business interruption losses under the Policy because Hartford contends that Plaintiff's property had not suffered any direct physical loss and the losses were excluded by the Pollution exclusion, and other exclusions which were not applicable to Plaintiff's losses.

**_Defendants' Uniform Conduct_**

43.     COVID-19 is physically impacting private commercial property in New York and throughout the United States, threatening the survival of thousands of restaurants, retail establishments, and other businesses that have had their business operations suspended or curtailed indefinitely by order of civil authorities.

44.     Upon information and belief, Hartford has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, and Extra Expense coverages for business income losses suffered due to COVID-19, orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations.

45.     Indeed, upon information and belief, no insurer intends to cover any losses caused by the COVID-19 pandemic. For example, on March 18, 2020, a bipartisan group of members of the U.S. House of Representatives sent a letter to the several insurance industry trade associations, noting the devasting impact the orders of civil authorities in response to COVID-19 were having on American businesses and requesting that insurers cover these financial losses, stating that "[b]usiness interruption insurance is intended to protect business against income losses as a result of disruptions to their operations and recognizing income losses due to COVID-19 will help sustain America's businesses through these turbulent times, keep their doors open, and retain employees on the payroll."[15]

46.     The insurance industry leaders sent a joint response, rejecting the plea to cover COVID-19 losses, explaining their position that "Business interruption policies do not, and were not designed to, provide coverage against communicable diseases such as COVID-19."[16]

47.     A declaratory judgment determining that the Business Income, Civil Authority, and Extra Expense coverages provided in common all-risk commercial property insurance policies applies to the suspension, curtailment, and interruption of business operations resulting from measures put into place by civil authorities is necessary to prevent the Plaintiff and similarly situated Class members from being denied critical coverage for which they have paid.

---

[15] https://cunningham.house.gov/sites/cunningham.house.gov/files/wysiwyg_uploaded/Signed%20BII%20Letter_Final.pdf

[16] Insurers Reject House Members' Request to Cover Uninsured COVID Business Losses, Insurance Journal (Mar. 20, 2020), available at https://www.insurancejournal.com/news/national/2020/03/20/561810.htm.

## Class Allegations

48.     Plaintiff brings this action as a class action for declaratory and monetary relief pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes.

49.     The Nationwide Class is defined as:

> All entities in the United States that have entered into standard all-risk commercial property insurance policies with Hartford, where such policies provide Business Income, Civil Authority, and Extra Expense coverages and do not exclude coverage for pandemics, and who have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19.

50.     The New York Sub-Class is defined as:

> All entities that have entered into standard all-risk commercial property insurance policies with Hartford to insure property in New York, where such policies provide Business Income, Civil Authority, and Extra Expense coverages and do not exclude coverage for pandemics, and who have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19.

51.     Excluded from each class are Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

52.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed classes following the discovery period and before the Court determines whether class certification is appropriate.

53.     This action is properly maintained as a class action. The Class and Sub-Class satisfy all of the requirements of Rule 23 for maintaining a class action.

54.     ***Ascertainability.*** The Class and Sub-Class members are identifiable either from Defendants' records or through self-identification in the claims process.

55.     ***Numerosity.*** The Class and Sub-Class are so numerous that joinder of all members is impracticable. Upon information and belief, Defendants have sold hundreds, if not thousands, of insurance policies that include Business Income, Civil Authority and Extra Expense coverages, to geographically dispersed insureds throughout the United States and New York.

56.     ***Existence and Predominance of Common Questions of Law or Fact.*** There are questions of law or fact that are common to the Class and which predominate over questions affecting any individual Class member. Common questions of law or fact include without limitation:

   a.     Whether Plaintiff and the Class members suffered a covered loss under the standard commercial property insurance policies issued to members of the Class;

   b.     Whether Defendants wrongfully denied all claims based on COVID-19;

   c.     Whether Defendants' Business Income coverage applies to a suspension of business caused by COVID-19 and/or related actions of civil authorities taken in response to the presence or threat of COVID-19;

   d.     Whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by the orders of local, municipal, city, county, and/or state governmental entities requiring the suspension of business during the outbreak of COVID-19 in the United States;

   e.     Whether Defendants' Extra Expense coverage applies to efforts to avoid or minimize a loss caused by COVID-19;

f.      Whether Defendants have breached their standard contracts of insurance through a uniform and blanket denial of all claims for business losses related to COVID-19 and/or the related actions of civil authorities taken in response to the presence or threat of COVID-19;

g.      Whether Plaintiff and the Class members suffered damages as a result of Defendants' actions; and

h.      Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

57.     ***Typicality.*** The claims of Plaintiff are typical of the claims of the Class and Sub-Class, which arise from the same wrongful conduct by Defendants. Plaintiff and the other Class members are all similarly affected by Defendants' refusal to pay under their uniform insurance policies.

58.     ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of Class members and has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class. Plaintiff has retained competent counsel who are experienced in the prosecution of complex class action litigation.

59.     ***Superiority.*** Adjudicating the claims of the Class members as a class action is superior to the alternative, because it allows for the fair and efficient adjudication of the controversy alleged in this Complaint, while avoiding the risk that the prosecution of separate actions by individual Class members would create inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants. This action presents no difficulties in management that would preclude its maintenance as a class action.

## Causes of Action

### COUNT I
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
### (Claim Brought on Behalf of the Nationwide Class and New York Sub-Class)

60.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

61.     Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and New York Sub-Class.

62.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

63.     Plaintiff's Policy, as well as those of the other Class members, are contracts under which Hartford was paid premiums in exchange for its promise to pay Plaintiff's and the other Class members' losses for claims covered by the Policies.

64.     In Plaintiff's Policy and the policies of other Class members, Hartford agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the period of restoration.

65.     Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations causing Plaintiff and Class members to suffer losses of Business Income.

66.     These suspensions and losses triggered Business Income coverage under Plaintiff's Policy and the policies of other Class members.

67.     Plaintiff and the other Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations

17

pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

68.     Hartford has denied claims related to COVID-19 on a uniform and class-wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

69.     An actual case or controversy exists regarding Plaintiff's and the other Class members' rights and Hartford's obligations under the Policies to reimburse Plaintiff and Class Members for the full amount of Business Income losses incurred by Plaintiff and the other Class members in connection with the suspension of their businesses stemming from orders intended to mitigate the COVID-19 pandemic.

WHEREFORE, Plaintiff and the other Class members seek a declaratory judgment from this Court declaring the following:

i.      Plaintiff's and the other Class members' Business Income losses incurred in connection with the closure order and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under their Policies; and

ii.     Hartford is obligated to pay Plaintiff and other Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the closure order during the period of restoration and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID-19 pandemic.

**COUNT II**
**BREACH OF CONTRACT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Nationwide Class and New York Sub-Classes)**

70.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

71.     Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and New York Sub-class.

72.     Plaintiff's Hartford Policy, as well as those of the other Class members, are contracts under which Hartford was paid premiums in exchange for its promise to pay Plaintiff's and the other Class members' losses for claims covered by the Policy.

73.     In Plaintiff's Policy and the policies of other Class members, Hartford agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the period of restoration.

74.     Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations causing Plaintiff and the other Class members to suffer losses of Business Income.

75.     These suspensions and losses triggered Business Income coverage under Plaintiff's Policy and the policies of other Class members.

76.     Plaintiff and the other Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them.

77.     Hartford, without justification, has refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

78.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Class members as a result of the closure orders and orders intended to mitigate the COVID-19 pandemic, Hartford has breached its coverage obligations under the Policy and other Class members' policies.

79.     As a result of Hartford's breaches of the Policy and other Class members' policies, Plaintiff and the other Class members have sustained substantial damages for which Hartford is liable, in an amount to be established at trial.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

**COUNT III**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Nationwide Class and New York Sub-Class)**

80.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

81.     Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and New York Sub-Class.

82.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

83.     Plaintiff's Policy, as well as those of the other Class members, are contracts under which Hartford was paid premiums in exchange for its promise to pay Plaintiff's and other Class members' losses for claims covered by the Policies.

84.     In Plaintiff's Policy and the policies of other Class members, Hartford agreed to pay for to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

85.     Plaintiff and the other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

86.     These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiff's Policy and the policies of other Class members.

87.     Plaintiff and Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

88.     Hartford has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

89.     An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Hartford's obligations under the Policies to reimburse Plaintiff and the other Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Class members in connection with closure orders and the necessary interruption of their businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

WHEREFORE, Plaintiff and the other Class members seek a declaratory judgment from this Court declaring the following:

    i.   Plaintiff's and other Class members' Civil Authority losses incurred in connection with the closure orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii.    Hartford is obligated to pay Plaintiff and other Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the closure orders and the necessary interruption of their businesses stemming from the orders intended to mitigate the COVID-19 pandemic.

## COUNT IV
## BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Nationwide Class and New York Sub-Class)

90.    Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

91.    Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and New York Sub-Class.

92.    In Plaintiff's Policy and the policies of other Class members, Hartford agreed to pay for to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

93.    Plaintiff and the other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

94.    These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiff's Policy and the policies of other Class members.

95.    Plaintiff and the other members of the Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them.

96.     Hartford, without justification, has refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

97.     By denying coverage for any business losses incurred by Plaintiff and other members of the Class in connection with the closure order and orders intended to mitigate the COVID-19 pandemic, Hartford has breached its coverage obligations under the Policy and other Class members' policies.

98.     As a result of Hartford's breaches of the Policy and other Class members' policies, Plaintiff and the other members of the Class have sustained substantial damages for which Hartford s liable, in an amount to be established at trial.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT V
## DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Nationwide Class and New York Sub-Class)

99.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

100.     Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and the New York Sub-Class.

101.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

102.     Plaintiff's Hartford Policy, as well as those of other Class members, are contracts under which Hartford was paid premiums in exchange for its promise to pay Plaintiff's and other Class members' losses for claims covered by the Policy.

103.     In Plaintiff's Policy and the policies of other Class members, Hartford agreed to pay for Extra Expenses incurred by Plaintiff and the other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

104.     Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations. As a result, Plaintiff and the other Class members have incurred Extra Expenses.

105.     These expenses triggered Extra Expense coverage under Plaintiff's Policy and the policies of other Class members.

106.     Plaintiff and the other Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

107.     Hartford has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

108.     An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Hartford's obligations under the Policies to reimburse Plaintiff and the other Class members for the full amount of Extra Expense losses incurred by Plaintiff and Class members in connection with closure orders and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID- 19 pandemic.

WHEREFORE, Plaintiff and the other Class members seek a declaratory judgment from this Court declaring the following:

i.      Plaintiff's and other Class members' Extra Expense losses incurred in connection with the closure orders and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under their Policies; and

ii.     Hartford is obligated to pay Plaintiff and other Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the closure orders during the period of restoration and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID-19 pandemic.

### COUNT VI
### BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Nationwide Class and New York Sub-Class)

109.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

110.     Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and New York Sub-Class.

111.     Plaintiff's Hartford Policy, as well as those of the other Class members, are contracts under which Hartford was paid premiums in exchange for its promise to pay Plaintiff's and the other Class members' losses for claims covered by the Policy.

112.     In Plaintiff's Policy and the policies of other Class members, Hartford agreed to pay for Extra Expenses incurred by Plaintiff and the other Class members during the period of

restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

113.    Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations. As a result, Plaintiff and the other Class members have incurred Extra Expenses.

114.    These expenses triggered Extra Expense coverage under Plaintiff's Policy and the policies of other Class members.

115.    Plaintiff and other members of the Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them.

116.    Hartford, without justification, has refused performance under the Policy and other Class members' policies by denying coverage for these Extra Expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

117.    By denying coverage for any business losses incurred by Plaintiff and other members of the Class in connection with the closure order and orders intended to mitigate the COVID-19 pandemic, Hartford has breached its coverage obligations under the Policy and other Class members' policies.

118.    As a result of Hartford's breaches of the Policies, Plaintiff and the other members of the Class have sustained substantial damages for which Hartford is liable, in an amount to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Class and New York Sub-Class, respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

A.      Certifying Plaintiff's claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the proposed Nationwide Class and New York Sub-Class, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Class Counsel;

B.      Entering declaratory judgments on Counts I, III, and V favor of Plaintiff and the members of the Nationwide Class and New York Sub-Class;

C.      Entering judgments on Counts II, IV, and VI in favor of Plaintiff and the members of the Nationwide Class and New York Sub-Class and awarding damages for breach of contract in an amount to be determined at trial;

D.      Awarding Plaintiff and the Nationwide Class and New York Sub-Class costs and disbursements and reasonable allowances for the fees of Plaintiff's counsel, Class Counsel and plaintiffs' experts, and reimbursement of expenses;

E.      Awarding pre-judgment and post-judgment interest; and

F.      Awarding such other and further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues so triable.


Dated: May 1, 2020

/s/ Oren S. Giskan

Oren S. Giskan
GISKAN SOLOTAROFF &
ANDERSON LLP
217 Centre Street, 6th Floor
New York, NY 10013
Tel: 212-847-8315
Email: ogiskan@gslawny.com

Michael J. Boni
(pro hac vice application forthcoming)
Joshua D. Snyder
(pro hac vice application forthcoming)
John E. Sindoni
(pro hac vice application forthcoming)
BONI, ZACK & SNYDER LLC
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Tel: 610-822-0200
Fax: 610-822-0206
Email: mboni@bonizack.com
        jsnyder@bonizack.com
        jsindoni@bonizack.com

Howard I. Langer
(pro hac vice application forthcoming)
Peter E. Leckman
(pro hac vice application forthcoming)
LANGER, GROGAN & DIVER P.C.
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: 215-320-5660
Fax: 215-320-5703
Email: hlanger@langergrogan.com
        ndiver@langergrogan.com
        pleckman@langergrogan.com

*Attorneys for Plaintiff and the Proposed
Classes*