**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FOOD FOR THOUGHT CATERERS CORP.,
on behalf of itself and all others similarly situated,

Plaintiff,

—*against*—

THE HARTFORD FINANCIAL SERVICES
GROUP, INC.; and

SENTINEL INSURANCE COMPANY, LTD.,

Defendants.

---

20 Civ. 3418 (JGK)

**MEMORANDUM OF LAW IN SUPPORT OF**
**SENTINEL INSURANCE COMPANY LTD.'S MOTION TO DISMISS**

Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

August 7, 2020

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND FACTS .................................................................................................. 2

DISCUSSION .................................................................................................................... 5

      I.     Governing Standards .................................................................................. 5

           A.     Standard for a Motion to Dismiss .............................................. 5

           B.     Insurance Contracts Are Enforced as Written ........................... 6

      II.    Food for Thought Has Not Alleged that Its Business Interruption
           Was Caused by Direct Physical Loss or Damage .................................... 7

      III.   Food for Thought Has Not Alleged Facts to Trigger
           "Additional Coverage" Under the Civil Authority Clause ................................. 13

CONCLUSION ................................................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Admiral Indemnity Co. v. Bouley International Holding, LLC,*
02 Civ. 9696. 2003 WL 22682273 (S.D.N.Y. Nov. 13, 2003) ........................................ 11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................... 5

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................................... 5

*Brink's Ltd. v. South African Airways,*
93 F.3d 1022 (2d Cir. 1996) .......................................................................................... 6

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) .......................................................................................... 6

*Commercial Union Insurance Co. v. Flagship Marine Services, Inc.,*
190 F.3d 26 (2d Cir. 1999) ........................................................................................... 12

*Cunninghame v. Equitable Life Assurance Society,*
652 F.2d 306 (2d Cir. 1981) .......................................................................................... 6

*Dae Associates, LLC v. AXA Art Insurance Corp.,*
158 A.D.3d 493 (1st Dep't 2018) ................................................................................... 6

*Friends of Danny DeVito v. Wolf,*
227 A.3d 872 (Pa. 2020) ............................................................................................... 10

*Gavrilides Management Co. v. Michigan Insurance Co.,*
Case No. 20-258-CB-C30 (Mich. Circuit Ct. July 1, 2020) ............................................. 8

*Gregory Packaging, Inc. v. Travelers Property Casualty Co.,*
No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) ..................................... 11

*Hero Enterprises B.V. v. Loretta Howard Gallery Inc.,*
20 F. Supp. 3d 421 (S.D.N.Y. 2014) .............................................................................. 6

*Keyspan Gas East Corp. v. Munich Reinsurance America, Inc.,*
96 N.E.3d 209 (N.Y. 2019) ........................................................................................... 6

*Morgan Stanley Group Inc. v. New England Insurance Co.,*
225 F.3d 270 (2d Cir. 2000) .......................................................................................... 6

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014)............................................................... 6, 9, 10, 11

*Pahuta v. Massey-Ferguson, Inc.*,
   170 F.3d 125 (2d Cir. 1999)............................................................................... 9

*Paradies Shops, Inc. v. Hartford Fire Insurance Co.*,
   No. 1:03-cv-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ........................... 15

*Rose's 1 LLC v. Eerie Insurance Exchange*,
   No. 2020 CA 002424 B (D.C. Super. Aug. 6, 2020) ......................................... 8

*Roundabout Theatre Co. v. Continental Casualty Co.*,
   302 A.D.2d 1 (1st Dep't 2002) .................................................................. 8, 9

*Schlamm Stone & Dolan, LLP. v Seneca Insurance Co.*,
   No. 603009/2002, 6 Misc. 3d 1037(A),
   2005 WL 600021 (N.Y. Sup. Ct. Mar. 04, 2005) ........................................... 12

*Sentinel Management Co. v. New Hampshire Insurance Co.*,
   563 N.W.2d 296 (Minn. App. 1997)............................................................ 11

*Social Life Magazine, Inc. v. Sentinel Insurance Co.*,
   No. 1:20-cv-03311-VEC (S.D.N.Y. May 14, 2020)........................................... 7

*South Texas Medical Clinics, P.A. v. CNA Financial Corp.*,
   No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008)........................... 15

*Southern Hospitality, Inc. v. Zurich American Insurance Co.*,
   393 F.3d 1137 (10th Cir. 2004) ................................................................. 13

*St. Paul Mercury Insurance Co. v. Magnolia Lady, Inc.*,
   No. 2:97-cv-153 BB, 1999 WL 33537191 (N.D. Miss. Nov. 4, 1999) ........................... 13

*Syufy Enterprises v. Home Insurance Co. of Indiana*,
   No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ................................... 14

*TRAVCO Insurance Co. v. Ward*,
   715 F. Supp. 2d 699 (E.D. Va. 2010) *aff'd*, 504 F. App'x 251 (4th Cir. 2013)............... 11

*United Air Lines, Inc. v. Insurance Co. of State of Pennsylvania*,
   439 F.3d 128 (2d Cir. 2006)....................................................................... 14

*Village of Sylvan Beach v. Travelers Indemnity Co.*,
   55 F.3d 114 (2d Cir. 1995)........................................................................ 6

## RULES

Fed. R. Civ. P. 12 ................................................................................................................. 5

Fed. R. Civ. P. 8 ................................................................................................................... 5

## REGULATIONS

Executive Order, 9 NYCRR 8.202 (Mar. 7, 2020) ........................................................... 2

Executive Order, 9 NYCRR 8.202.1 (Mar. 12, 2020) ...................................................... 2

Executive Order, 9 NYCRR 8.202.6 (Mar. 18, 2020) ...................................................... 3

Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) ................................................. 3, 14

**INTRODUCTION**

This insurance coverage case involves a business interruption claim arising from the COVID-19 pandemic. By this motion, defendant Sentinel Insurance Company Ltd. ("Sentinel") seeks to dismiss the Complaint because the underlying policy covers only "direct physical loss" or "physical damage" to property, which is not alleged to have occurred.

The plaintiff ("Food for Thought") is a catering business. It purchased property insurance triggered only where there is "direct physical loss of" or "physical damage to" property at Food for Thought's premises that causes a suspension in operations. For purposes of the claim at issue, Food for Thought concedes that its catering business was disrupted not because of any property damage at the premises but because of an external factor: governmental orders mandating that non-essential businesses reduce their in-person workforces, to limit the spread of COVID-19. Those orders have nothing to do with property damage and everything to do with keeping people apart. While Food for Thought argues that there *has* been direct physical loss because the governmental orders "deprived Plaintiff of the use of its property" (ECF 19 at 1), binding precedent from the Appellate Division has rejected the argument that "loss of use" amounts to direct physical loss. That court and others have found that there is no direct physical loss where a business is forced to close for reasons *external* to the premises and unrelated to property damage.

Food for Thought also invokes a policy provision covering business losses when "access to" its premises is "specifically prohibited by order of a civil authority as the direct result" of "direct physical loss or direct physical damage" in "the immediate area." Nothing like that is alleged to have happened. The governmental orders were not issued because of property damage in the "immediate area" of Food for Thought's business. Rather, they were issued to keep people apart to slow the spread of the virus.

Simply put, there is no coverage for Food for Thought's claims. While the COVID-19 pandemic has impacted businesses in unprecedented ways, it cannot vitiate the terms of Sentinel's insurance contract to create coverage where none exists. The policy does not insure Food for Thought's income loss unless that income loss is tied to a direct physical loss or damage to property at its premises or nearby.

For all of these reasons and others appearing in the record, Sentinel respectfully requests that the Court dismiss Food for Thought's claims with prejudice. Because Food for Thought is the only named plaintiff in this putative class action, the case should be dismissed entirely.

## BACKGROUND FACTS

Food for Thought is a New York-based catering business that purchased property insurance from Sentinel. (ECF 1 ("Compl.") ¶¶ 7, 25 (identifying the policy); Ex. A[1] (the "Policy").)

Starting in March 2020, Governor Cuomo issued a series of executive orders aimed at addressing the COVID-19 pandemic. The first was issued on March 7, 2020, when Governor Cuomo declared a "a State disaster emergency for the entire State of New York." Executive Order, 9 NYCRR 8.202 (Mar. 7, 2020) (cited Compl. ¶ 17).

On March 12, 2020, Governor Cuomo directed that "[a]ny place of business or public accommodation . . . operate at no greater than fifty percent occupancy, and no greater than fifty percent of seating capacity, for thirty days," in order to reduce "community contact transmission of COVID-19." Executive Order, 9 NYCRR 8.202.1 (Mar. 12, 2020) (cited Compl. ¶ 18).

---

[1] Citations in the form "Ex. __" refer to the exhibits to the accompanying declaration of Charles Michael, dated August 7, 2020.

On March 20, 2020, Governor Cuomo went further, directing all non-essential businesses "to reduce the in-person workforce at any work locations by 100%." Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) (cited Compl. ¶ 22).

The workforce reduction mandate did not mean that access to business locations was prohibited. Employees could visit their premises "temporarily" for routine functions, such as retrieving mail, "so long as they w[ould] not be in contact with other people." (Ex. C, at 3 (Question 13) (guidance from Empire State Development Corporation).) *See also* Executive Order, 9 NYCRR 8.202.6 (Mar. 18, 2020) (authorizing guidance)

Food for Thought alleges that it "was forced to suspend business operations" in March 2020 "as a result of COVID-19 and the related actions of civil authorities." (Compl. ¶ 40.) Food for Thought filed an insurance claim relating to its alleged losses, and, on April 23, 2020, Sentinel denied the claim. (*Id*. ¶ 42.)

On May 1, 2020, Food for Thought filed its Complaint, seeking to represent a nationwide class of policyholders that "have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19" but that have been denied coverage. (*Id*. ¶ 49.)[2]

Food for Thought is invoking three aspects of its insurance coverage:  Business Income, Extra Expense, and Civil Authority.

The Business Income coverage provision is triggered by "physical loss of or physical damage" to property that causes a "suspension" in operations:

---

[2] Food for Thought originally sued, but has since voluntarily dismissed, Sentinel's parent company, The Hartford Financial Services Group, Inc. (ECF 27.)

> We will pay for the actual loss of Business Income you sustain due
> to the necessary suspension of your "operations" during the
> "period of restoration". The suspension must be caused by direct
> physical loss of or physical damage to property at the "scheduled
> premises", including personal property in the open (or in a vehicle)
> within 1,000 feet of the "scheduled premises", caused by or
> resulting from a Covered Cause of Loss.

(Compl. ¶ 29 (quoting language); Policy at SENT0035 § A.5.o.(1); Compl ¶¶ 60-79 (Counts I

and II seeking Business Income coverage).)  The term "Covered Cause of Loss" is defined to

mean "risks of direct physical loss," except where excluded or limited. (Compl. ¶ 34; Policy at

SENT00027 § A.3 (capitalization removed).)

The Extra Expense provision is similarly triggered only where there is "direct physical

loss or physical damage to property" at Food for Thought's premises:

> We will pay reasonable and necessary Extra Expense you incur
> during the "period of restoration" that you would not have incurred
> if there had been no direct physical loss or physical damage to
> property at the "scheduled premises", including personal property
> in the open (or in a vehicle) within 1,000 feet, caused by or
> resulting from a Covered Cause of Loss.

(Compl. ¶ 32 (quoting language); Policy at SENT0035 § A.5.p.(1); Compl ¶¶ 99-118 (Counts V

and VI seeking Extra Expense coverage).)

Finally, under the Civil Authority provision, there is "Additional Coverage" for "the

actual loss of Business Income you sustain when access to your 'scheduled premises' is

specifically prohibited by order of a civil authority as the direct result of a Covered Cause of

Loss to property in the immediate area" of the premises. (Compl. ¶ 33 (quoting language); Policy

at SENT0036 § A.5.q; Compl. ¶¶ 80-98 (Counts III and IV seeking coverage under the Civil

Authority provision).)

Food for Thought's Complaint does not identify any particular property that was

damaged or that suffered a physical loss. Nor does Food for Thought contend that the virus was

- 4 -

present at its premises or somehow caused physical damage. Its theory of physical loss is instead based on the loss of "use" of the premises:  "Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities because, among other things, they have been unable to use their property for its intended purpose, they have been denied access to their property, causing a suspension of business operations on the premises and the function of their property to be nearly eliminated or destroyed." (*Id*. ¶ 35.)

The parties each filed a pre-motion letter in anticipation of this motion (ECF 14, 19), and the Court authorized Sentinel to move to dismiss. (ECF 28.)

## DISCUSSION

### I.   GOVERNING STANDARDS

#### A.   <u>Standard for a Motion to Dismiss</u>

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

For purposes of a motion to dismiss, the Court may consider not only the complaint itself, but also "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2002). Under this rule, courts commonly consider insurance policies in deciding motions to dismiss cases arising from those policies. *See*, *e.g.*, *No Hero Enters. B.V. v. Loretta Howard Gallery Inc.*, 20 F. Supp. 3d 421, 423 n.1 (S.D.N.Y. 2014). Here, Food for Thought invokes and liberally quotes the Policy (*see*, *e.g.*, Compl. ¶¶ 25, 29-34); hence it is appropriate for the Court to consider the Policy in ruling on this motion.

### B. <u>Insurance Contracts Are Enforced as Written</u>

Under New York law, the party seeking insurance coverage "bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).[3] In evaluating whether this burden has been met, courts apply the familiar standards to contracts generally. That is, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995).

The enforcement of the plain meaning of contract language is essential to the functioning of the insurance industry. Insurers are in the business of pricing risk, and that would not be possible if courts could arbitrarily bind an insurer to "a risk that it did not contemplate and for which it has not been paid." *Dae Assocs., LLC v. AXA Art Ins. Corp.*, 70 N.Y.S.3d 500, 501 (1st Dep't 2018) (citation omitted). For the same reason, a court should "not make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation." *Keyspan Gas East Corp. v. Munich Reinsurance Am., Inc.*, 96 N.E.3d 209, 216 (N.Y. 2019).

---

[3] New York law governs. In diversity cases, federal courts in New York apply New York's choice-of-law rules, which "seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030 (2d Cir. 1996). Where the dispute concerns insurance for "a New York-based entity" and "covers property in New York," that jurisdiction is New York. *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 327 n.4 (S.D.N.Y. 2014); *see also Cunninghame v. Equitable Life Assur. Society*, 652 F.2d 306, 308 n.1 (2d Cir. 1981) (in insurance cases "principal location of the insured risk is given particular emphasis").

## II.   FOOD FOR THOUGHT HAS NOT ALLEGED THAT ITS BUSINESS INTERRUPTION WAS CAUSED BY DIRECT PHYSICAL LOSS OR DAMAGE

To trigger Business Income and Extra Expense coverage, Food for Thought's suspension of operations must have been caused by "direct physical loss of or direct physical damage to property" at its covered premises. (Compl. ¶¶ 29, 32; Policy at SENT0035 §§ A.5.o.(1), A.5.p.(1).) But this is not what Food for Thought alleges. Rather, Food for Thought alleges that the "cause of Plaintiff's and other Class members' losses were precautionary measures taken by their respective states to prevent the spread of COVID-19 in the future." (*Id*. ¶ 39.)

None of this has anything to do with any physical property loss or damage at Food for Thought's premises. In fact, the Complaint does not identify any particular property that was lost or damaged, relying instead on the allegation that Food for Thought has "been unable to use [its] property for its intended purpose." (*Id*. ¶ 35.)

Judge Caproni recently denied a preliminary injunction sought by a magazine business that alleged it was similarly impacted by COVID-19. The magazine relied upon substantially identical policy language and substantially the same arguments as those here. Judge Caproni concluded that "New York law is clear that this kind of business interruption [claim] needs some damage to the property" before there is coverage. *Social Life Magazine, Inc. v. Sentinel Ins. Co*., No. 1:20-cv-03311-VEC (S.D.N.Y. May 14, 2020) (Ex. D at 15 (transcript)). Restricted access to the property from government orders without any property damage to the insured or nearby property was not enough. *Id*. (Judge Caproni ruled from the bench, and the plaintiff voluntarily dismissed the case before a written opinion was issued.)

Other courts addressing COVID-19 business interruption insurance claims have ruled the same way. A court in Michigan concluded, on similar facts and under similar policy language, that "the loss of access or use of the premises due to executive orders and the Covid-19 virus

- 7 -

crisis" did "not constitute the direct physical damage or injury that's required under the policy."
*See Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Ct.
July 1, 2020) (Ex. E at 23 (transcript); Ex. F (order incorporating grounds stated in transcript).)
The plaintiff, the operator of a restaurant, had argued that the "physical requirement is met
because people were physically restricted from dine-in services," but the court found that
argument to be "simply nonsense," coming "nowhere close to meeting the requirement" that
there be "some physical alteration to or physical damage" to property at the premises. (Ex. E at
20.)  And yesterday, a court in the District of Columbia ruled that governmental closure orders in
response to the COVID-19 pandemic did not constitute "direct physical loss" because the "orders
did not have any effect on the material or tangible structure of the insured properties." *Rose's 1
LLC v. Eerie Ins. Exchange*, No. 2020 CA 002424 B (D.C. Super. Aug. 6, 2020) (Ex. G at 5.)

These decisions are consistent with the leading New York case addressing the "direct
physical loss" policy language, *Roundabout Theatre Co. v. Contin. Cas. Co.*, 751 N.Y.S.2d 4 (1st
Dep't 2002). There, the scaffolding of a midtown building collapsed, causing New York City to
order the closure of certain surrounding blocks. A Broadway theater which was not itself
damaged "became inaccessible to the public and . . . was forced to cancel 35 performances of
*Cabaret*." *Id*. at 5.

The trial court had interpreted the coverage language—"direct physical loss or damage to
the property"—expansively to include "loss of use" of the property. *Id.* at 6. But the First
Department reversed, finding that the trial court had "completely ignore[d]" the policy's plain
language, which was "limited to losses involving physical damage to the insured's property." *Id*.
at 8. As the First Department explained: "The plain meaning of the words 'direct' and 'physical'

narrow the scope of coverage and mandate the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id*. at 7.

Here, Food for Thought is relying on *exactly* the loss-of-use argument that was squarely rejected in *Roundabout*: "Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities because . . . they have been *unable to use their property for its intended purpose* . . . . (Compl. ¶ 35.) (emphasis added); *see also* ECF 19 at 1 (pre-motion letter arguing that there is direct, physical loss because "the stay-at-home orders deprived Plaintiff of the use of its property").)

Food for Thought has argued that *Roundabout* is "distinguishable due to the lack of civil authority coverage" in the policy in that case (ECF 19 at 2), but that implicitly concedes that *Roundabout* is dispositive as to the two other claimed coverages at issue—Business Income and Extra Expense, both of which are triggered by the same "direct physical loss" language that was in the policy in *Roundabout*. (As discussed below, Food for Thought fails to state a claim for Civil Authority coverage for reasons beyond the *Roundabout* case.)

The *Roundabout* case is not only exactly on point with respect to the Business Income and Extra Expense claims, but it is binding in federal court, because there is no "persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc*., 170 F.3d 125, 134 (2d Cir. 1999).

*Roundabout* was applied by Judge Engelmayer in another highly instructive case, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co*., 17 F. Supp. 3d 323 (S.D.N.Y. 2014). In *Newman Myers*, power was preemptively shut off to certain areas of New York because of Hurricane Sandy, and Judge Engelmayer concluded that language about direct physical loss or physical damage did not cover a law firm that could not access its offices.

- 9 -

After summarizing the *Roundabout* case, Judge Engelmayer explained: "The critical policy language here—'direct physical loss or damage'—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Id.* at 331. He continued: "The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id.*

Judge Engelmayer also pointed out that "other provisions of the policy"—provisions which are in the Policy at issue here—"support this interpretation." *Id.* at 332.  Specifically, Business Income and Extra Expense coverage would extend through a "period of restoration," which ends when the property at the premises "should be *repaired, rebuilt or replaced* with reasonable speed and similar quality." (Policy at SENT0035 §§ A.5.o.(1), A.5.p.(1); *id.* at SENT00049 § G.12 (emphasis added).) Citing this same language, Judge Engelmayer explained: "The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it." 17 F. Supp. 3d at 332. This is exactly right. Here, the "loss of use" argument in the Complaint cannot be squared with the contract language about the property being "repaired, rebuilt or replaced." There is no property in need of repair, meaning there was no property with "physical" damage in the first place—and hence there is no coverage.[4]

---

[4] Food for Thought's pre-motion letter misleadingly cites *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020) to suggest that the COVID-19 pandemic involves "substantial damage to property." (ECF 19 at 1.) There, the Pennsylvania Supreme Court held the COVID-19 pandemic triggered a statute giving the governor certain emergency authority when there is a "catastrophe" that "results in substantial damage to property, hardship, suffering or possible loss of life." *Id.* at 887. In concluding that the statute was triggered, the court used ellipses to *omit* the phrase about property, holding "that the COVID 19 pandemic is unquestionably a catastrophe that 'results in . . . hardship, suffering or possible loss of life.'" *Id.* at 888 (citation omitted; ellipses in original). This decision cuts *against* any suggestion that the coronavirus causes property damage.

Food for Thought's pre-motion letter does not engage with the facts of *Newman Myers*, but instead refers to Judge Engelmayer's discussion of "cases involving odors, noxious fumes, and water contamination" where direct, physical loss *was* found. (ECF 19 at 2.) But Food for Thought fails to mention that Judge Engelmayer found those cases inapplicable because there (as here) the loss was caused by a governmental order, as opposed to a danger at the premises: "Whether or not these cases were each correctly decided, each involved the closure of a building due to . . . a physical change for the worse in the premises." 17 F. Supp. 3d at 330. Here, too, there is no allegation that Food for Thought's premises were closed because of a localized, physical change for the worse in the building. Instead, just like in *Newman Myers*, the alleged loss was due to a government order that allegedly limited the use of the premises.

With one exception, the cases Food for Thought cites on this point did not involve a governmental order but instead involved (i) concrete, physical damage occurring on-site that (ii) was the cause of the loss. *See Admiral Indem. Co. v. Bouley Int'l Holding, LLC*, 02 Civ. 9696. 2003 WL 22682273, at *3 (S.D.N.Y. Nov. 13, 2003) (two restaurants affected by "dust and debris and water contamination"); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709 (E.D. Va. 2010) (insured's home was "rendered uninhabitable by the toxic gases released by . . . Chinese Drywall"), *aff'd*, 504 F. App'x 251 (4th Cir. 2013); *Gregory Packaging, Inc. v. Travelers Property Cas. Co.*, No. 2:12-cv-04418, 2014 WL 6675934, at *3-4 (D.N.J. Nov. 25, 2014) (release of ammonia rendered a packaging facility "physically unfit for normal human occupancy"); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. App. 1997) ("asbestos fibers have contaminated the buildings, creating a hazard to human health") (cited ECF 19 at 2).

The only exception cuts *against* Food for Thought's position.  In *Schlamm Stone &*
*Dolan, LLP v. Seneca Ins. Co*., No. 603009/2002, 6 Misc. 3d 1037(A), 2005 WL 600021 (N.Y.
Sup. Ct. Mar. 04, 2005) (cited ECF 19 at 2), a law firm was denied business interruption
insurance for the period immediately following the September 11, 2001 terrorist attacks—despite
alleging that "dust and other particles" made it "difficult to remain in the offices"—because the
"cause of plaintiff's business interruption loss was not by damage to plaintiff's property" but
instead was New York City's decision to close Lower Manhattan. *Id*. at *1-2. That is exactly the
fact pattern here: whether or not there was physical damage to Food for Thought's premises (and
there is no allegation of any), the causes of Food for Thought's losses were concededly the
"orders of civil authorities" (Compl. ¶ 35) and the underlying imperative for people to stay
distant from one another to control the spread of COVID-19.

At bottom, Food for Thought, just like the theater in *Roundabout* and the law firms in
*Newman Myers* and *Schlamm Stone*, is complaining about the loss of use of its property caused
by an external factor (the government orders to prevent the spread of COVID-19), not about
losses caused by property damage at the premises—which is why Sentinel properly denied
coverage.

Finally, Food for Thought argues that there is no specific exclusion for viruses in the
Policy. (ECF 19 at 2.) But that is irrelevant. It is well-settled that the "absence of an exclusion
cannot create coverage; the words used in the policy must themselves express an intention to
provide coverage . . . ." *Comm'l Union Ins. Co. v. Flagship Marine Services, Inc*., 190 F.3d 26,
33 (2d Cir. 1999) (citation omitted). Here, the words of the policy do not provide coverage under
the facts alleged. The Counts concerning Business Income and Extra Expense coverage (Counts
I, II, V, and VI) should therefore be dismissed.

### III. FOOD FOR THOUGHT HAS NOT ALLEGED FACTS TO TRIGGER "ADDITIONAL COVERAGE" UNDER THE CIVIL AUTHORITY CLAUSE

Under the Civil Authority provision, Food for Thought must allege facts to show that it lost income because:

- "access" to its premises was "specifically prohibited by order of a civil authority"; and

- that the order from a civil authority was "the direct result" of a Covered Cause of Loss (defined as "risks of direct physical loss") to "property in the immediate area."

(Compl. ¶¶ 33, 34; Policy at SENT0036 § A.5.q; *id.* at SENT00027 § A.3 (defining Covered Cause of Loss) (capitalization removed).) Food for Thought has not alleged facts that would trigger coverage under these requirements.

First, Food for Thought has not alleged there was any "direct physical loss" for all the reason discussed above, either at its own premises or in the immediate area.

Second, the Complaint nowhere alleges that access to Food for Thought's premises is "specifically prohibited." Even non-essential businesses like caterers have been allowed access for routine functions, so long as the visitors were not "in contact with other people." (Ex. C at 3 (Question 13).) Cases across the country recognize that policy language concerning "prohibited" access is not triggered where a policyholder's premises is only rendered less accessible. *See, e.g.*, *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1139-41 (10th Cir. 2004) (grounding of flights after September 11th made it more difficult for customers to access plaintiff's hotels but did not "prohibit access"); *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, No. 2:97-cv-153 BB, 1999 WL 33537191, at *3 (N.D. Miss. Nov. 4, 1999) (civil authority coverage not triggered by bridge closure that reduced casino-hotel's business by 80% but did not completely cut off access); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at

*2 (N.D. Cal. Mar. 21, 1995) (curfews imposed during period of civil unrest did not specifically prohibit access to the policyholders' movie theaters).

Third, even if access were considered "prohibited," that was not the "direct result" of property damage to "property in the immediate area." There is no allegation here about damaged property in or around Food for Thought's premises. The governmental orders at issue in this case were concededly issued to keep people distant from one another, so as "to prevent the spread of COVID-19 in the future." (Compl. ¶ 39.)

Courts routinely reject civil authority claims where orders of civil authority are aimed at fear of future harm, not existing property loss or damage. The Second Circuit's decision in *United Air Lines, Inc. v. Ins Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006) is instructive. There, United Air Lines sought recovery for losses caused by the temporary shutdown of Reagan Washington National Airport following the September 11, 2001 terrorist attacks. United invoked a similar clause, providing coverage where access "is prohibited by order of civil authority as a direct result of damage to adjacent premises." *Id*. at 129. According to United, the shutdown was due to damage at the Pentagon nearby. The Second Circuit found there was no coverage because the government's "decision to halt operations at the Airport indefinitely was based on fears of future attacks," not about the fact that the Pentagon was damaged. *Id*. at 134.

Just as in *United,* the "order of a civil authority" at issue here has everything to do with protecting human life by controlling when and how people assemble in particular places, and nothing to do with any damaged property. No damaged property is identified in the Complaint, which concedes the orders were issued "to prevent the spread of COVID-19 in the future." (Compl. ¶ 39.) *See also* Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) (order based on risk of "community contact transmission of COVID-19").

- 14 -

The Court should follow *United* and conclude that Food for Thought has not alleged facts that would trigger Civil Authority coverage. *See also*, *e.g.*, *Paradies Shops, Inc. v. Sentinel Ins. Co.*, No. 1:03-cv-3154-JEC, 2004 WL 5704715, at *1-2, *6 (N.D. Ga. Dec. 15, 2004) (holding that there was no coverage in part because the FAA's order that grounded planes after September 11th was not a "direct result" of property damage); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (evacuation of county before hurricane making landfall was "due to" fear of future damage rather than existing damage).

In its pre-motion letter, Food for Thought tries to re-write its complaint, and to distinguish *United*, by arguing that the orders were not based on limiting future harm but about the presence of the virus in New York City, "the epicenter of the pandemic." (ECF 19 at 3.) But this still has nothing to do with property loss or damage. The orders did not specify any contaminated property in New York City or direct people to avoid damaged or dangerous property; they restricted places where people congregate in close proximity, such as workplaces.

When the magazine business in *Social Life* tried to make a similar point—arguing that "the virus exists everywhere"—Judge Caproni responded: "It damages lungs. It doesn't damage printing presses." (Ex. D at 5.) This is exactly right. The governmental orders causing Food for Thoughts losses are about protecting against people infecting one another, not about protecting against any risks relating to property damage.

In sum, Food for Thought's Complaint has not alleged, and cannot allege, what is necessary to trigger coverage: that its business interruption was caused by a civil authority order that was "the direct result" of loss or damage to property in the "immediate area." (Policy at SENT0036 § A.5.q; *id.* at SENT00027 § A.3 (defining Covered Cause of Loss).) Counts III and IV, therefore, should be dismissed, too.

## CONCLUSION

For the foregoing reasons and others appearing on the record, the Court should dismiss

Food for Thought's Complaint in its entirety with prejudice.

Dated: August 7, 2020                    Respectfully submitted,

                                         STEPTOE & JOHNSON LLP

                                         By:   /s/ Sarah D. Gordon
Charles Michael                              Sarah D. Gordon*
Meghan Newcomer                              1330 Connecticut Avenue, NW
1114 Avenue of the Americas                  Washington, D.C. 20036
New York, New York 10036                     (202) 429-3000
(212) 506-3900                               sgordon@steptoe.com
cmichael@steptoe.com                         *admitted *pro hac vice*
mnewcomer@steptoe.com

            *Counsel for Sentinel Insurance Company, Ltd.*

## CERTIFICATION OF COUNSEL

I, Sarah D. Gordon, hereby certify that this memorandum of law complies with all

formatting requirements in Rule 2.D. of Judge Koeltl's Individual Practices.  This memorandum

contains 4,730 words.


Respectfully submitted,

By:   */s/ Sarah D. Gordon*
        Sarah D. Gordon