**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FOOD FOR THOUGHT CATERERS CORP.,
on behalf of itself and all others similarly situated,

Plaintiff,

—*against*—

SENTINEL INSURANCE COMPANY, LTD.,

Defendant.

---

20 Civ. 3418 (JGK)

**MEMORANDUM OF LAW IN SUPPORT OF**
**SENTINEL INSURANCE COMPANY LTD.'S MOTION TO DISMISS**

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

September 25, 2020

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

BACKGROUND FACTS ...................................................................................................... 2

DISCUSSION ........................................................................................................................ 5

     I.     Governing Standards........................................................................................... 5

          A.     Standard for a Motion to Dismiss ............................................................. 5

          B.     Insurance Contracts Are Enforced as Written ........................................... 6

     II.     Food for Thought Has Not Alleged Facts Triggering Business Income or Extra Expense Coverage ............................................................................................. 7

          A.     Food for Thought Has Not Alleged that Its Business Interruption Was Caused by Direct Physical Loss or Damage ...................................... 7

          B.     Food for Thought Cannot Rescue Its Claims By Alleging the Virus Was "Likely Present" at Its Premises......................... 14

               1.     Food for Thought Has Not Alleged Loss or Damage That is "Physical" ................................................ 14

               2.     Food for Thought Does Not Allege That the "Likely" Presence of the Virus at its Premises Was the Cause of Any Losses....................................................... 15

          C.     There Have Been No Governmental "Factual Findings" of Physical Damage at Food for Thought's Premises.............................. 16

          D.     The Absence of a Virus Exclusion Is Irrelevant ...................................... 17

     III.     Food for Thought Has Not Alleged Facts to Trigger the Civil Authority Clause ..................................................................... 18

CONCLUSION...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*10E, LLC v. Travelers Indemnity Co.*,
No. 2:20-cv-04418, 2020 WL 5095587 (C.D. Cal. Aug. 28, 2020) ................................... 9

*Admiral Indemnity Co. v. Bouley International Holding, LLC*,
02 Civ. 9696. 2003 WL 22682273 (S.D.N.Y. Nov. 13, 2003) ........................................ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................... 5

*Brink's Ltd. v. South African Airways*,
93 F.3d 1022 (2d Cir. 1996) .............................................................................................. 6

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .............................................................................................. 5

*Commercial Union Insurance Co. v. Flagship Marine Services, Inc.*,
190 F.3d 26 (2d Cir. 1999) .............................................................................................. 17

*Cunninghame v. Equitable Life Assurance Society*,
652 F.2d 306 (2d Cir. 1981) .............................................................................................. 6

*Dae Associates, LLC v. AXA Art Insurance Corp.*,
158 A.D.3d 493 (1st Dep't 2018) ...................................................................................... 6

*Friends of Danny DeVito v. Wolf*,
227 A.3d 872 (Pa. 2020) ............................................................................................ 16, 17

*Gavrilides Management Co. v. Michigan Insurance Co.*,
Case No. 20-258-CB-C30 (Mich. Circuit Ct. July 1, 2020) ........................................ 8, 19

*Gregory Packaging, Inc. v. Travelers Property Casualty Co.*,
No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) ................................... 12

*Hero Enterprises B.V. v. Loretta Howard Gallery Inc.*,
20 F. Supp. 3d 421 (S.D.N.Y. 2014) ................................................................................. 5

*Iannucci v. Allstate Insurance Co.*,
354 F. Supp. 3d 125 (N.D.N.Y. 2018) .............................................................................. 14

*Keyspan Gas East Corp. v Munich Reinsurance America, Inc.*,
    96 N.E.3d 209 (N.Y. 2019)................................................................ 6

*Malaube, LLC v. Greenwich Insurance Co.*,
    No. 20-22615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ............................ 9

*Mama Jo's, Inc. v. Sparta Insurance Co.*,
    No. 18-12887, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) .................................. 14, 15

*Mastellone v. Lightning Rod Mutual Insurance Co.*,
    884 N.E.2d 1130 (Ohio App. 2008)........................................................ 14

*Morgan Stanley Group Inc. v. New England Insurance Co.*,
    225 F.3d 270 (2d Cir. 2000)................................................................ 6

*Mudpie, Inc. v. Travelers Cas. Ins. Co.*,
    20-cv-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020)............................ 9

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014)................................................ 6, 11, 12, 15

*Pahuta v. Massey-Ferguson, Inc.*,
    170 F.3d 125 (2d Cir. 1999)................................................................ 11

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*,
    No. 20-CV-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020)........................... 9, 18, 19

*Paradies Shops, Inc. v. Hartford Fire Insurance Co.*,
    No. 1:03-cv-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ........................... 20

*Philadelphia Parking Authority v. Federal Insurance Co.*,
    385 F.Supp.2d 280 (S.D.N.Y. 2005)........................................................ 14

*Port Authority of New York & New Jersey v. Affiliated FM Insurance Co.*,
    311 F.3d 226 (3d Cir. 2002)................................................................ 14

*Rose's 1 LLC v. Eerie Insurance Exchange*,
    No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Aug. 6, 2020)........................ 8

*Roundabout Theatre Co. v Continental Casualty Co.*,
    302 A.D.2d 1 (1st Dep't 2002) ................................................................ 10

*Sandy Point Dental PC v. The Cincinnati Insurance Co.*,
    20 CV 2150, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020)................................ 10, 18, 19

*Schlamm Stone & Dolan, LLP. v Seneca Insurance Co.*,
    No. 603009/2002, 6 Misc. 3d 1037(A),
    2005 WL 600021 (N.Y. Sup. Ct. Mar. 04, 2005) ........................................ 15, 16

*Sentinel Management Co. v. New Hampshire Insurance Co.*,
    563 N.W.2d 296 (Minn. App. 1997) .......................................................................... 13

*Social Life Magazine, Inc. v. Sentinel Insurance Co.*,
    No. 1:20-cv-03311-VEC (S.D.N.Y. May 14, 2020) ......................................... 7, 8, 19, 21

*South Texas Medical Clinics, P.A. v. CNA Financial Corp.*,
    No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ........................................ 21

*Southern Hospitality, Inc. v. Zurich American Insurance Co.*,
    393 F.3d 1137 (10th Cir. 2004) ................................................................................ 19

*St. Paul Mercury Insurance Co. v. Magnolia Lady, Inc.*,
    No. 2:97-cv-153 BB, 1999 WL 33537191 (N.D. Miss. Nov. 4, 1999) ........................... 19

*Syufy Enterprises v. Home Insurance Co. of Indiana*,
    No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) .................................. 19

*The Inns by the Sea v. California Mutual Insurance Co.*,
    No. 20CV001274 (Super. Ct. Cal. Aug. 4, 2020) ............................................................. 8

*TRAVCO Insurance Co. v. Ward*,
    715 F. Supp. 2d 699 (E.D. Va. 2010) *aff'd*, 504 F. App'x 251 (4th Cir. 2013) ............... 12

*Turek Enterprises, Inc.  v. State Farm Mutual Automobile Insurance Co.*,
    Case No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) ................................. 9

*United Air Lines, Inc. v. Insurance Co. of State of Pennsylvania*,
    439 F.3d 128 (2d Cir. 2006) ..................................................................................... 20

*Universal Image Productions, Inc. v. Federal Insurance Co.*,
    475 F. App'x 569 (6th Cir. 2012) .............................................................................. 14

*Village of Sylvan Beach v. Travelers Indemnity Co.*,
    55 F.3d 114 (2d Cir. 1995) ......................................................................................... 6

## RULES

Fed. R. Civ. P. 12 ....................................................................................................... 5

Fed. R. Civ. P. 8 ......................................................................................................... 5

## REGULATIONS

Executive Order, 9 NYCRR 8.202 (Mar. 7, 2020) ........................................................ 2

Executive Order, 9 NYCRR 8.202.1 (Mar. 12, 2020) .................................................... 2

Executive Order, 9 NYCRR 8.202.6 (Mar. 18, 2020) ...................................................... 3

Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) ....................................... 3, 15, 19

## INTRODUCTION

This insurance coverage case involves a business interruption claim arising from the COVID-19 pandemic. By this motion, defendant Sentinel Insurance Company Ltd. ("Sentinel") seeks to dismiss the Complaint because the underlying policy covers only "direct physical loss" or "physical damage" to property, which is not alleged to have occurred.

The plaintiff ("Food for Thought") is a catering business. It purchased property insurance triggered only where there is "direct physical loss of" or "physical damage to" property at Food for Thought's premises that causes a suspension in operations. For purposes of the claim at issue, Food for Thought concedes that its catering business was disrupted not because of any property damage at the premises but because of an external factor: governmental orders mandating that non-essential businesses reduce their in-person workforces, to limit the spread of COVID-19. Those orders have nothing to do with property damage and everything to do with keeping people apart. While Food for Thought argues that direct physical loss *did* occur because Food for Thought "has been unable to use its property," binding precedent from the Appellate Division has rejected the argument that "loss of use" amounts to direct physical loss. That court and others have found that there is no direct physical loss where a business is forced to close for reasons *external* to the premises and unrelated to property damage. A growing chorus of cases across the country has agreed, specifically with respect to COVID-19 business interruption claims.

Food for Thought also invokes a policy provision covering business losses when "access to" its premises is "specifically prohibited by order of a civil authority as the direct result" of "direct physical loss or direct physical damage" in "the immediate area." Nothing like that is alleged to have happened. The governmental orders restricted the in-person workforces of non-essential businesses like Food for Thought, but did not go so far as to fully prohibit access to the

premises. And the orders were issued to keep people apart to slow the spread of the virus, not because of property damage in the "immediate area" of Food for Thought's business.

Simply put, there is no coverage for Food for Thought's claims. While the COVID-19 pandemic has impacted businesses in unprecedented ways, it cannot vitiate the terms of Sentinel's insurance contract to create coverage where none exists. The policy does not insure Food for Thought's income loss unless that income loss is tied to a direct physical loss or damage to property at its premises or nearby.

For all of these reasons and others appearing in the record, Sentinel respectfully requests that the Court dismiss Food for Thought's claims with prejudice. Because Food for Thought is the only named plaintiff in this putative class action, the case should be dismissed entirely.

## BACKGROUND FACTS

Food for Thought is a New York-based catering business that purchased property insurance from Sentinel. (ECF 41 ("Am. Compl.") ¶¶ 7, 33; Ex. A[1] (the "Policy").)

Starting in March 2020, Governor Cuomo issued a series of executive orders aimed at addressing the COVID-19 pandemic. The first was issued on March 7, 2020, when Governor Cuomo declared "a State disaster emergency for the entire State of New York." Executive Order, 9 NYCRR 8.202 (Mar. 7, 2020) (cited Am. Compl. ¶ 19).

On March 12, 2020, Governor Cuomo directed that "[a]ny place of business or public accommodation . . . operate at no greater than fifty percent occupancy, and no greater than fifty percent of seating capacity, for thirty days," in order to reduce "community contact transmission of COVID-19." Executive Order, 9 NYCRR 8.202.1 (Mar. 12, 2020) (cited Am. Compl. ¶ 20).

---

[1] Citations in the form "Ex. __" refer to the exhibits to the accompanying declaration of Charles Michael, dated September 25, 2020.

On March 20, 2020, Governor Cuomo went further, directing all non-essential businesses "to reduce the in-person workforce at any work locations by 100%." Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) (cited Am. Compl. ¶ 24).

The workforce reduction mandate did not mean that access to business locations was prohibited. Employees could visit their premises "temporarily" for routine functions, such as retrieving mail, "so long as they w[ould] not be in contact with other people." (Ex. B, at 3 (Question 13) (guidance from Empire State Development Corporation).) *See also* Executive Order, 9 NYCRR 8.202.6 (Mar. 18, 2020) (authorizing guidance)

Because of the "stay at home" orders above, Food for Thought alleges that it was forced to "suspen[d] [its] business operations." (Am. Compl. ¶ 50.)  Food for Thought then filed an insurance claim, and, on April 23, 2020, Sentinel denied the claim. (*Id*. ¶¶ 55-56.)

On May 1, 2020, Food for Thought filed its initial Complaint. (ECF 1 ¶ 49.) On July 13, 2020, Sentinel filed a pre-motion letter in anticipation of moving to dismiss (ECF 14), and, on July 20, 2020, Food for Thought responded. (ECF 19.) With the Court's authorization (ECF 28), on August 7, 2020, Sentinel moved to dismiss the initial Complaint. (ECF 29-31.)

Rather than opposing the motion, on September 4, 2020, Food for Thought filed an Amended Complaint. (ECF 38; ECF 41 (correcting caption).) The factual allegations were essentially unchanged. The changes were instead focused on adding legal arguments and characterizations to suggest that Food for Thought had suffered a direct physical loss. (Ex. C (redline comparison).)

As with the initial Complaint, Food for Thought seeks to represent a nationwide class of policyholders "who have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19." (Am. Compl. ¶ 63.)

Food for Thought is invoking three aspects of its insurance coverage:  Business Income, Extra Expense, and Civil Authority.

The Business Income coverage provision is triggered by "physical loss of or physical damage" to property that causes a "suspension" in operations:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

(Am. Compl. ¶ 37 (quoting language); Policy at SENT0035 § A.5.o.(1); Am. Compl ¶¶ 74-93 (Counts I and II seeking Business Income coverage).)  The term "Covered Cause of Loss" is defined to mean "risks of direct physical loss," except where excluded or limited. (Am. Compl. ¶ 42; Policy at SENT00027 § A.3 (capitalization removed).)

The Extra Expense provision is similarly triggered only where there is "direct physical loss or physical damage to property" at Food for Thought's premises:

> We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

(Am. Compl. ¶ 40 (quoting language); Policy at SENT0035 § A.5.p.(1); Compl ¶¶ 113-32 (Counts V and VI seeking Extra Expense coverage).)

Finally, the Civil Authority provision covers "the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area" of

- 4 -

the premises. (Am. Compl. ¶ 41(quoting language); Policy at SENT0036 § A.5.q; Compl. ¶¶ 94-112 (Counts III and IV seeking coverage under the Civil Authority provision).)

Food for Thought's Amended Complaint does not identify any particular property that was damaged or that suffered a physical loss. Its theory of physical loss is instead that Food for Thought and other businesses "lost the physical use of their property and had their business operations suspended or curtailed indefinitely by order of civil authorities." (Am. Compl. ¶ 57.)

## DISCUSSION

I. **GOVERNING STANDARDS**

A. <u>**Standard for a Motion to Dismiss**</u>

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

For purposes of a motion to dismiss, the Court may consider not only the complaint itself, but also "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Under this rule, courts commonly consider insurance policies in deciding motions to dismiss cases arising from those policies. *See, e.g.*, *No Hero Enters. B.V. v. Loretta Howard Gallery Inc.*, 20 F. Supp. 3d 421, 423 n.1 (S.D.N.Y. 2014). Here, Food for Thought invokes and

liberally quotes the Policy (*see*, *e.g.*, Am. Compl. ¶¶ 33, 37-46); hence it is appropriate for the Court to consider the Policy in ruling on this motion.

### B.   Insurance Contracts Are Enforced as Written

Under New York law, the party seeking insurance coverage "bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).[2] In evaluating whether this burden has been met, courts apply the familiar standards to contracts generally. That is, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Village of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir. 1995).

The enforcement of the plain meaning of contract language is essential to the functioning of the insurance industry. Insurers are in the business of pricing risk, and that would not be possible if courts could arbitrarily bind an insurer to "a risk that it did not contemplate and for which it has not been paid." *Dae Assocs., LLC v. AXA Art Ins. Corp.*, 70 N.Y.S.3d 500, 501 (1st Dep't 2018) (citation omitted). For the same reason, a court should "not make or vary the

---

[2] New York law governs. In diversity cases, federal courts in New York apply New York's choice-of-law rules, which "seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030 (2d Cir. 1996). Where the dispute concerns insurance for "a New York-based entity" and "covers property in New York," that jurisdiction is New York. *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 327 n.4 (S.D.N.Y. 2014); *see also Cunninghame v. Equitable Life Assur. Society*, 652 F.2d 306, 308 n.1 (2d Cir. 1981) (in insurance cases "principal location of the insured risk is given particular emphasis").

contract of insurance to accomplish its notions of abstract justice or moral obligation." *Keyspan Gas East Corp. v. Munich Reinsurance Am.*, *Inc.*, 96 N.E.3d 209, 216 (N.Y. 2019).

## II.   FOOD FOR THOUGHT HAS NOT ALLEGED FACTS TRIGGERING BUSINESS INCOME OR EXTRA EXPENSE COVERAGE

Food for Thought has not plausibly alleged that its business was suspended because of any "direct physical loss," as necessary to trigger either Business Income or Extra Expense coverage. While Food for Thought's Amended Complaint advances various arguments to try to characterize matters otherwise, each is meritless, as detailed below.

### A.   Food for Thought Has Not Alleged that Its Business Interruption Was Caused by Direct Physical Loss or Damage

To trigger Business Income and Extra Expense coverage, Food for Thought's suspension of operations must have been caused by "direct physical loss of or direct physical damage to property" at its covered premises. (Compl. ¶¶ 29, 32; Policy at SENT0035 §§ A.5.o.(1), A.5.p.(1).) But this is not what Food for Thought alleges. Rather, Food for Thought alleges that it "suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19." (Am. Compl. ¶ 63; *see also id*. ¶ 57 (alleging that Food for Thought and others "had their business operations suspended or curtailed indefinitely by order of civil authorities").)

None of this has anything to do with any physical property loss or damage at Food for Thought's premises. In fact, the Complaint does not identify any particular property that was lost or damaged, relying instead on the allegation that Food for Thought has "lost the physical use" of its property. (*Id*.)

Judge Caproni recently denied a preliminary injunction sought by a magazine business that alleged it was similarly impacted by COVID-19. The magazine relied upon substantially identical policy language and substantially the same arguments as those here. Judge Caproni concluded that "New York law is clear that this kind of business interruption [claim] needs some

damage to the property" before there is coverage. *Social Life Magazine, Inc. v. Sentinel Ins. Co.*,

No. 1:20-cv-03311-VEC (S.D.N.Y. May 14, 2020) (Ex. D at 15 (transcript)). Restricted access to

the property from government orders without any property damage to the insured or nearby

property was not enough. *Id.* (Judge Caproni ruled from the bench, and the plaintiff voluntarily

dismissed the case before a written opinion was issued.)

Other courts addressing COVID-19 business interruption insurance claims have almost

uniformly ruled the same way, as indicated in the chart below:

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 1 | 7/1/20, Michigan Circuit Ct. | Restaurant | "[T]here actually is no factual development that could change the fact that the complaint is complaining about the loss of access or use of the premised due to executive orders and the Covid-19 virus crisis. So, there's no factual development that could possibly change that or amendment to the complaint that could possibly change that those things do not constitute the direct physical damage or injury that's required under the policy." *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Ct. July 1, 2020) (Ex. E at 23 (transcript); Ex. F (order incorporating grounds stated in transcript).) |
| 2 | 8/4/20, Cal. Super. Ct. | Hotels | "[W]hen the Governor ordered us all to shelter in place and businesses to close, it wasn't necessarily because there was COVID at your hotels. It was because there was a fear that COVID might arrive at your hotels, and there was a fear by having people move around the state, that that would cause us all to infect each other." *The Inns by the Sea v. Cal. Mut. Ins. Co.*, No. 20CV001274 (Super. Ct. Cal. Aug. 4, 2020) (Ex. G, at 5; *see also* Ex. H (Order dismissing case).) |
| 3 | 8/6/20, D.C. Super. Ct | Restaurants | "[G]overnmental edicts that commanded individuals and businesses to take certain actions . . . did not effect any direct changes to the properties . . . [or] have any effect on the material or tangible structure of the insured properties." *Rose's 1 LLC v. Eerie Ins. Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Aug. 6, 2020) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 4 | 8/13/20, W.D. Tex. | Barbershops | "[T]he Court finds that the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable." *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13 2020) |
| 5 | 8/26/20, S.D. Fla. | Restaurant | "[Plaintiff's] loss must arise [from] actual damage. And it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses—not anything tangible, actual, or physical." *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) |
| 6 | 8/28/20, C.D. Cal. | Restaurant | "[N]othing in the [complaint] plausibly supports an inference that the virus physically altered Plaintiff's property, however much the public health response to the virus may have affected business conditions for Plaintiff's restaurant." *10E, LLC v. Travelers Indem. Co.*, No. 2:20-cv-04418, 2020 WL 5095587, at *5 (C.D. Cal. Aug. 28, 2020) |
| 7 | 9/3/20, E.D. Mich. | Chiropractic practice | "'[A]ccidental direct physical loss to Covered Property' is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property." *Turek Enters., Inc.  v. State Farm Mut. Automobile Ins. Co.*, Case No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) |
| 8 | 9/11/10, S.D. Cal. | Barbershop | "[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *Pappy's Barber Shops, Inc. v. Farmers Group, Inc*., No. 20-CV-907, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020) |
| 9 | 9/14/20, N.D. Cal. | Retail store | "Because Mudpie's complaint contains no allegations of a physical force which 'induced a detrimental change in the property's capabilities,' the Court finds that Mudpie has failed to establish a 'direct physical loss of property' under its insurance policy." *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 20-cv-03213, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|-----|-----------|----------------|-------------------------------|
| 10 | 9/21/10, N.D. Ill. | Dental practice | "In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage." *Sandy Point Dental PC v. The Cincinnati Ins. Co.*, 20 CV 2150, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020)[3] |

All of these decisions are consistent with the leading New York case addressing the "direct physical loss" policy language, *Roundabout Theatre Co. v. Contin. Cas. Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002). There, the scaffolding of a midtown building collapsed, causing New York City to order the closure of certain surrounding blocks. A Broadway theater which was not itself damaged "became inaccessible to the public and . . . was forced to cancel 35 performances of *Cabaret.*" *Id.* at 5.

The trial court had interpreted the coverage language—"direct physical loss or damage to the property"—expansively to include "loss of use" of the property. *Id.* at 6. But the First Department reversed, finding that the trial court had "completely ignore[d]" the policy's plain language, which was "limited to losses involving physical damage to the insured's property." *Id.* at 8. As the First Department explained: "The plain meaning of the words 'direct' and 'physical'

---

[3] One court applying Missouri law has come out the other way, but its central conclusion—that "restricted access to Plaintiffs' premises" amounted to "direct physical loss," is flatly inconsistent with New York law, as discussed below. *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-03127, 2020 WL 4692385, at *6 n.6 (W.D. Mo. Aug. 12, 2020).

narrow the scope of coverage and mandate the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id*. at 7.

Here, Food for Thought is relying on *exactly* the loss-of-use argument that was squarely rejected in *Roundabout*. Its Amended Complaint alleges that Food for Thought and other businesses "**lost the physical use** of their property and had their business operations suspended or curtailed indefinitely by order of civil authorities." (Am. Compl. ¶ 57 (emphasis added); *see also* ECF 19 at 1 (pre-motion letter arguing that there is direct, physical loss because "the stay-at-home orders deprived Plaintiff of the use of its property")).)

Food for Thought has argued that *Roundabout* is "distinguishable due to the lack of civil authority coverage" in the policy in that case (*id*. at 2), but that implicitly concedes that *Roundabout* is dispositive as to the two other claimed coverages at issue—Business Income and Extra Expense, both of which are triggered by the same "direct physical loss" language that was in the policy in *Roundabout*. (As discussed below, Food for Thought fails to state a claim for Civil Authority coverage for reasons beyond the *Roundabout* case.)

The *Roundabout* case is not only exactly on point with respect to the Business Income and Extra Expense claims, but it is binding in federal court, because there is no "persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc*., 170 F.3d 125, 134 (2d Cir. 1999).

*Roundabout* was applied by Judge Engelmayer in another highly instructive case, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co*., 17 F. Supp. 3d 323 (S.D.N.Y. 2014). In *Newman Myers*, power was preemptively shut off to certain areas of New York because of Hurricane Sandy, and Judge Engelmayer concluded that language about direct physical loss or physical damage did not cover a law firm that could not access its offices.

After summarizing the *Roundabout* case, Judge Engelmayer explained:  "The critical policy language here—'direct physical loss or damage'—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Id*. at 331. He continued: "The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id*.

Food for Thought's pre-motion letter does not engage with the facts of *Newman Myers*, but instead refers to Judge Engelmayer's discussion of "cases involving odors, noxious fumes, and water contamination" where direct, physical loss *was* found. (ECF 19 at 2.) But Food for Thought fails to mention that Judge Engelmayer found those cases inapplicable because there (as here) the loses were caused by *external* factors, as opposed to a danger at the premises: "Whether or not these cases were each correctly decided, each involved the closure of a building due to . . . a physical change for the worse in the premises." 17 F. Supp. 3d at 330. Here, too, there is no allegation that Food for Thought's premises were closed because of a localized, physical change for the worse in the building. Instead, just like in *Newman Myers*, the loss was allegedly due to a government order—here, to contain COVID-19's spread—that limited the use of the premises.

The cases Food for Thought cites on this point did not involve a governmental order but instead involved (i) concrete, physical damage occurring on-site that (ii) was the cause of the loss. *See Admiral Indem. Co. v. Bouley Int'l Holding, LLC*, 02 Civ. 9696. 2003 WL 22682273, at *3 (S.D.N.Y. Nov. 13, 2003) (two restaurants affected by "dust and debris and water contamination"); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709 (E.D. Va. 2010) (insured's home was "rendered uninhabitable by the toxic gases released by . . . Chinese

Drywall"), *aff'd*, 504 F. App'x 251 (4th Cir. 2013); *Gregory Packaging, Inc. v. Travelers Property Cas. Co.*, No. 2:12-cv-04418, 2014 WL 6675934, at *3-4 (D.N.J. Nov. 25, 2014) (release of ammonia rendered a packaging facility "physically unfit for normal human occupancy"); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. App. 1997) ("asbestos fibers have contaminated the buildings, creating a hazard to human health") (cited ECF 19 at 2).[4]

At bottom, Food for Thought, just like the theater in *Roundabout* and the law firm in *Newman Myers*, is complaining about the loss of use of its property caused by an external factor (the government orders to prevent the spread of COVID-19), not about losses caused by property damage at the premises—which is why Sentinel properly denied coverage.

---

[4] For this same reason, Food for Thought is incorrect to argue that the Policy's exclusion for "vapors" and "fumes" would be meaningless unless the exclusion implied that the Policy was intended to reach losses from non-tangible damage. (Am. Compl. ¶ 49.) That is incorrect. Like the cases above, vapors or fumes might otherwise lead to a covered loss if they generated (in Judge Engelmayer's phrase) "a physical change for the worse in the premises." 17 F. Supp. 3d at 330. Whether or not it is theoretically possible for a virus to do the same is not a question the Court needs to decide here, because Food for Thought cannot allege that the virus in fact *did* cause a physical change for the worse at its premises, or that that change was the reason for its losses (as opposed to the *external* factor of the governmental response to prevent the spread of the virus).

**B.**     **Food for Thought Cannot Rescue Its Claims By Alleging
the Virus Was "Likely Present" at Its Premises**

Food for Thought's Amended Complaint is sprinkled with newly-added allegations about
the "the likely physical presence of COVID-19 on or within" its property (Am. Compl. ¶ 79; *see
also id*. ¶¶ 2, 43, 50, 88, 118, 127; Ex. C (redline showing changes)), but the hypothetical
presence of the virus is still not be grounds for coverage. As discussed below, the Amended
Complaint lacks allegations of loss or damage that is both "physical" and that is the cause of the
alleged suspension in operations.

**1.**     **Food for Thought Has Not Alleged Loss or Damage That is "Physical"**

The term "physical" means "pertaining to real, tangible objects." Black's Law Dictionary
(11th ed. 2019). In the insurance context, the "requirement that the loss be 'physical,'" is "widely
held" to "preclude any claim against the property insurer when the insured merely suffers a
detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of
the property." 10A Steven Plitt, et al. Couch on Insurance § 148:46 (3d ed. 1995); *see also
Iannucci v. Allstate Ins. Co*., 354 F. Supp. 3d 125, 140 (N.D.N.Y. 2018) (same); *Phil. Parking
Auth. v. Federal Ins. Co*., 385 F.Supp.2d 280, 288 (S.D.N.Y. 2005) (the "interruption in business
must be caused by some physical problem with the covered property," such as "structural
damage caused by a fire").

Thus, for example:

- In *Port Authority of New York & New Jersey v. Affiliated FM Insurance Co*., 311
  F.3d 226 (3d Cir. 2002), the Third Circuit concluded that the "mere presence of
  asbestos" in a building was not "physical loss or damage" because that did not
  amount to "'a distinct, demonstrable, and physical alteration' of its structure." *Id*.
  at 235-36 (citation omitted).  The court explained that a physical loss would
  require an "actual release of [asbestos] fibers" such that the "structure is made
  useless or uninhabitable. *Id*. at 236.

- In *Universal Image Productions, Inc. v. Federal Insurance Co*., 475 F. App'x
  569, 573 (6th Cir. 2012), the Sixth Circuit concluded that mold and bacteria in a

building did not amount to "direct physical loss" because that phrase "contemplates an actual change in insured property"—that is, "tangible" damage. The insured had to "clean several pieces of personal property in order to remove any possible mold or bacteria contaminant," but the Sixth Circuit concluded that cleaning did not "constitute physical loss or damage." *Id*. 574 n.8.

- In *Mastellone v. Lightning Rod Mutual Insurance Co*., 884 N.E.2d 1130, 1144 (Ohio App. 2008), the court found that "mold staining on the exterior siding of the house" did not "not rise to the level of 'physical injury'" because it "did not affect the structure of the wood" and could be remediated by cleaning.

- In *Mama Jo's, Inc. v. Sparta Insurance Co*., No. 18-12887, 2020 WL 4782369, at *1 (11th Cir. Aug. 18, 2020), there was 18 months of road construction next to a restaurant, and "dust and debris generated by the construction migrated into the restaurant," requiring cleaning on daily basis. The Eleventh Circuit concluded there was no coverage because "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id*. at *8.

These authorities correctly read the term "physical" in accordance with its plain meaning, which cannot be stretched to include "damage" from a virus that concededly remains viable at most for a few days. (Am. Compl. ¶ 13.)

Further confirmation of this reading is the fact that the coverage Food for Thought seeks would extend through a "period of restoration," which ends when the property at premises "should be *repaired, rebuilt or replaced* with reasonable speed and similar quality." (Policy at SENT0035 §§ A.5.o.(1), A.5.p.(1); *id*. at SENT00049 § G.12 (emphasis added).) Citing this same language, Judge Engelmayer in *Newman Myers* explained: "The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it." 17 F. Supp. 3d at 332. This is exactly right. There is no property in need of repair, meaning there was no property with "physical" damage in the first place—and hence there is no coverage.

### 2. Food for Thought Does Not Allege That the "Likely" Presence of the Virus at its Premises Was the Cause of Any Losses

Even if Food for Thought could somehow show loss or damage at its premises that is considered "physical," that would still not suffice because, as discussed above, the *cause* of the

alleged losses was not any localized, physical event. Rather, it was the virus outbreak, and efforts to slow its spread. The governmental orders here did not focus on localized property damage but required *all* nonessential business to close, regardless of whether any particular physical location was contaminated (and, conversely, allowed essential businesses to stay open, irrespective of the presence of the virus at those locations). Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020).

The court's decision in *Schlamm Stone*, discussed above,  *& Dolan, LLP v. Seneca Ins. Co.*, No. 603009/2002, 6 Misc. 3d 1037(A), 2005 WL 600021 (N.Y. Sup. Ct. Mar. 04, 2005) is instructive to this point. There, a law firm was denied business interruption insurance for the period immediately following the September 11, 2001 terrorist attacks—despite alleging that "dust and other particles" made it "difficult to remain in the offices"—because those dust particles were not the cause of its alleged losses. *Id*. at *1. All of Lower Manhattan was closed because of the attacks, not because of any particular damage at the firm's offices. *Id*. The same analysis explains why there is no coverage here.

### C.   There Have Been No Governmental "Factual Findings" of Physical Damage at Food for Thought's Premises

Food for Thought refers to a series of Executive Orders from Mayor DeBlasio, and highlights a recital in those Orders claiming that the "virus physically is causing property loss and damage." (Am. Compl. ¶ 27). But that bare, vague recital cannot change the reality of what property damage did or did not occur at Food for Thought's premises. While Food for Thought argues that this was a "fact-based determination" (*id.* ¶ 28) the Orders do not give any hint as to what property exactly was lost or damaged, or in what ways.

In fact, the City has admitted that the language about property was inserted after lobbying from "people who had concerns about insurance"—surely a euphemistic reference to the plaintiffs' bar. *See* Leslie Scism, *Companies Hit by Covid-19 Want Insurance Payouts. Insurers*

*Say No.*, The Wall Street Journal (June 30, 2020) (copy attached as Ex. I).  The powers of the New York City Mayor may be broad, but they do not include the power to issue factual "findings" in a private contract dispute.

Along these same lines, Food for Thought is wrong to argue that in *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020) "the Pennsylvania Supreme Court recognized the COVID-19 pandemic" as involving "'substantial damage to property." (Am. Compl. ¶ 28.) This is a gross misrepresentation.  In *Friends of Danny DeVito*, the Pennsylvania Supreme Court held the COVID-19 pandemic triggered a statute giving the governor certain emergency authority when there is a "catastrophe" that "results in substantial damage to property, hardship, suffering or possible loss of life." *Id.* at 887. In concluding that the statute was triggered, the court used ellipses to *omit* the phrase about property, holding "that the COVID 19 pandemic is unquestionably a catastrophe that 'results in . . . hardship, suffering or possible loss of life.'" *Id.* at 888 (citation omitted; ellipses in original). This decision cuts *against* any suggestion that the coronavirus causes property damage.

### D.    The Absence of a Virus Exclusion Is Irrelevant

Food for Thought argues that viruses must be covered because there is no specific exclusion for viruses in the Policy.  (ECF 19 at 2.) But that is irrelevant. It is well-settled that the "absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage . . . ." *Comm'l Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26, 33 (2d Cir. 1999) (citation omitted).

Food for Thought focuses on a particular, form virus exclusion from a trade association called the Insurance Services Office ("ISO"), to suggest that ISO would not have drafted the exclusion unless "losses caused by a virus were intended to be covered" in policies like the one

here. (Am. Compl. ¶ 48.) In fact, the opposite is true.  The ISO document cited in the complaint makes clear that viruses are generally *not* intended to be encompassed by property policies:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, *contrary to policy intent*.

(Ex. J, Amendatory Endorsement, pg. 2 (emphasis added) (cited Am. Compl. ¶ 48 n.27.)

And this makes perfect sense. As the National Association of Insurance Commissioners has explained, the very nature of insurance as a means to spread risk is incompatible with providing coverage for a global pandemic: "Insurance works well and remains affordable when a relatively small number of claims are spread across a broader group, and therefore it is not typically well suited for a global pandemic where virtually every policyholder suffers significant losses at the same time for an extended period." (Ex. K. at 2.)

\* \* \*

Here, the words of the policy do not provide coverage under the facts alleged. The Counts concerning Business Income and Extra Expense coverage (Counts I, II, V, and VI) should therefore be dismissed.

## III.   FOOD FOR THOUGHT HAS NOT ALLEGED FACTS TO TRIGGER THE CIVIL AUTHORITY CLAUSE

Under the Civil Authority provision, Food for Thought must allege facts to show that it lost income because:

- "access" to its premises was "specifically prohibited by order of a civil authority"; **and**

- that the order from a civil authority was "the direct result" of a Covered Cause of Loss (defined as "risks of direct physical loss") to "property in the immediate area."

(Compl. ¶¶ 33, 34; Policy at SENT0036 § A.5.q; *id*. at SENT00027 § A.3 (defining Covered Cause of Loss) (capitalization removed).) Food for Thought has not alleged facts that would trigger coverage under these requirements.

First, Food for Thought has not alleged there was any "direct physical loss" for all the reason discussed above, either at its own premises or in the immediate area. Several of the cases discussed above, finding no "direct physical loss" for purposes of Business Income clauses, concluded that similar "civil authority" clauses were not triggered, either. *Sandy Point*, 2020 WL 5630465, at *3; *Pappy's Barber Shops*, 2020 WL 5500221, at *6; *Diesel Barbershop,* 2020 WL 4724305, at *7; *Gavrilides Mgmt. Co. v. Michigan Ins. Co*., Case No. 20-258-CB-C30 (Mich. Circuit Ct. July 1, 2020) (Ex. E, at 22); *Social Life Magazine, Inc. v. Hartford Ins. Co*., No. 1:20-cv-03311-VEC (S.D.N.Y. May 14, 2020) (Ex. D, at 12-14).

Second, the Amended Complaint nowhere alleges that access to Food for Thought's premises is "specifically prohibited." Even non-essential businesses like caterers have been allowed access for routine functions, so long as the visitors were not "in contact with other people." (Ex. B at 3 (Question 13).) As one court explained, in the context of a similar COVID-19 business interruption case, even if "government orders alleged in the complaint prohibit the operation of Plaintiff's business" that is not the same as "prohibit[ing] *access* to Plaintiffs' place of business." *Pappy's Barber Shops*, 2020 WL 5500221, at *6 (emphasis added) (denying civil authority coverage)*; see also Sandy Point*, 2020 WL 5630465, at *3 (same).

Cases across the country recognize that policy language concerning "prohibited" access is not triggered where a policyholder's premises is only rendered less accessible. *See, e.g.*, *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1139-41 (10th Cir. 2004) (grounding

of flights after September 11th made it more difficult for customers to access plaintiff's hotels but did not "prohibit access"); *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, No. 2:97-cv-153 BB, 1999 WL 33537191, at *3 (N.D. Miss. Nov. 4, 1999) (civil authority coverage not triggered by bridge closure that reduced casino-hotel's business by 80% but did not completely cut off access); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (curfews imposed during period of civil unrest did not specifically prohibit access to the policyholders' movie theaters).

Third, even if access were considered "prohibited," that was not the "direct result" of property damage to "property in the immediate area." There is no allegation here about damaged property anywhere. The governmental orders at issue in this case were concededly issued to keep people distant from one another, so as "to stop the spread of COVID-19." (Am. Compl. ¶ 63.) The executive order mandating that non-essential businesses like Food for Thought reduce their in-person workforces by 100% refers explicitly to a concern for "community contact transmission of COVID-19." Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) (cited Am. Compl. ¶ 20).

Courts routinely reject civil authority claims where orders of civil authority are aimed at fear of future harm, not existing property loss or damage. The Second Circuit's decision in *United Air Lines, Inc. v. Ins Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006) is instructive. There, United Air Lines sought recovery for losses caused by the temporary shutdown of Reagan Washington National Airport following the September 11, 2001 terrorist attacks. United invoked a similar clause, providing coverage where access "is prohibited by order of civil authority as a direct result of damage to adjacent premises." *Id*. at 129. According to United, the shutdown was due to damage at the Pentagon nearby. The Second Circuit found there was no coverage because

the government's "decision to halt operations at the Airport indefinitely was based on fears of future attacks," not about the fact that the Pentagon was damaged. *Id*. at 134.

Just as in *United,* the "order of a civil authority" at issue here has everything to do with protecting human life by controlling when and how people assemble in particular places, and nothing to do with any damaged property.

The Court should follow *United* and conclude that Food for Thought has not alleged facts that would trigger Civil Authority coverage. *See also*, *e.g.*, *Paradies Shops, Inc. v. Sentinel Ins. Co.*, No. 1:03-cv-3154-JEC, 2004 WL 5704715, at *1-2, *6 (N.D. Ga. Dec. 15, 2004) (holding that there was no coverage in part because the FAA's order that grounded planes after September 11th was not a "direct result" of property damage); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (evacuation of county before hurricane making landfall was "due to" fear of future damage rather than existing damage).

In its pre-motion letter, Food for Thought tries to re-write its complaint, and to distinguish *United*, by arguing that the orders were not based on limiting future harm but about the presence of the virus in New York City, "the epicenter of the pandemic." (ECF 19 at 3.) But this still has nothing to do with property loss or damage. The orders did not specify any contaminated property in New York City or direct people to avoid damaged or dangerous property; they restricted places where people congregate in close proximity, such as workplaces.

When the magazine business in *Social Life* tried to make a similar point—arguing that "the virus exists everywhere"—Judge Caproni responded: "It damages lungs. It doesn't damage printing presses." (Ex. D at 5.) This is exactly right. The governmental orders causing Food for Thoughts losses are about protecting against people infecting one another, not about protecting against any risks relating to property damage.

In sum, Food for Thought's Complaint has not alleged, and cannot allege, what is necessary to trigger coverage: that its business interruption was caused by a civil authority order that was "the direct result" of loss or damage to property in the "immediate area." (Policy at SENT0036 § A.5.q; *id*. at SENT00027 § A.3 (defining Covered Cause of Loss).) Counts III and IV, therefore, should be dismissed, too.

## CONCLUSION

For the foregoing reasons and others appearing on the record, the Court should dismiss Food for Thought's Amended Complaint in its entirety with prejudice.

Dated: September 25, 2020

Respectfully submitted,

STEPTOE & JOHNSON LLP

By:   */s/ Sarah D. Gordon*

Charles Michael
Meghan Newcomer
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
cmichael@steptoe.com
mnewcomer@steptoe.com

Sarah D. Gordon*
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-3000
sgordon@steptoe.com
*admitted *pro hac vice*

*Counsel for Sentinel Insurance Company, Ltd.*

- 22 -

## <u>CERTIFICATION OF COUNSEL</u>

I, Charles Michael, hereby certify that this memorandum of law complies with all

formatting requirements in Rule 2.D. of Judge Koeltl's Individual Practices.  This memorandum

contains 6,587 words.


Respectfully submitted,

By: ___*/s/ Charles Michael*_____
Charles Michael