**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**FOOD FOR THOUGHT CATERERS CORP.,**

               **Plaintiff,**            **20-cv-3418 (JGK)**

     **- against –**            **MEMORANDUM OPINION**
                                     **AND ORDER**

**SENTINEL INSURANCE COMPANY, LTD.,**

               **Defendant.**

────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Food for Thought Caterers, Corp. ("Food for Thought"), brought this action against the defendant, Sentinel Insurance Company, Ltd. ("Sentinel"), to recover business losses resulting from restrictions on non-essential businesses imposed by civil authorities in response to the COVID-19 pandemic. Food for Thought alleges that by denying coverage for business losses incurred as a result of government-ordered pandemic restrictions, the defendant breached its coverage obligations under a business insurance policy that Sentinel issued to Food for Thought. The defendant moves to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the defendant's motion is **granted.**

**I.**

The following facts are drawn from the Amended Complaint ("Am. Compl.") and documents referenced therein and are accepted as true for the purposes of this motion.

Food for Thought operates a catering service with its principal place of business in New York, New York. Am. Compl. ¶ 7. In 2019, Food for Thought obtained a business owner's policy from Sentinel. Id. ¶ 33; Michael Decl. Ex. A (the "Sentinel Policy"). The Policy covers loss of "Business Income" sustained "due to the necessary suspension of" the insured's business operations, when the suspension is "caused by direct physical loss of or physical damage to property . . . resulting from a Covered Cause of Loss." Am. Compl. ¶ 37. The Policy defines "Covered Cause of Loss" to mean "risks of direct physical loss," except where explicitly excluded or limited. Id. ¶ 42. The Policy does not exclude coverage for losses caused by viruses. Id. ¶ 45.

The Policy also covers "Extra Expense[s]" that the insured "would not have incurred if there had been no direct physical loss or physical damage to [the insured] property." Id. ¶ 40. Finally, the Policy includes a Civil Authority provision, which covers "loss of Business Income" sustained if access to the insured's premises "is specifically prohibited by order of a

2

civil authority as the direct result of a Covered Cause of Loss to property in the immediate area." Id. ¶ 41.

Beginning in March 2020, Food for Thought suspended its business operations to comply with executive orders issued by the Governor of New York State and the Mayor of New York City in response to the COVID-19 pandemic. Id. ¶ 50. On March 20, 2020, Governor Andrew Cuomo signed Executive Order No. 202.8, ordering the closure of "all non-essential businesses statewide." Id. ¶ 24. On March 23, 2020, Governor Cuomo signed Executive Order No. 202.10, ordering the cancellation of all "[n]on-essential gatherings of individuals of any size for any reason." Id. ¶ 26. Mayor Bill de Blasio also issued orders similar to those issued by Governor Cuomo, "because of the propensity of the virus to spread person-to-person and also because the virus physically is causing property loss and damage." Id. ¶ 27.

Food for Thought alleges that, "as a direct result of the presence of the COVID-19 disease and the related actions of civil authorities," it "has been unable to use" and "has been denied access to" its business premises, consequently causing the plaintiff to suspend its operations, "suffer significant losses and incur significant expenses." Id. ¶¶ 50, 54. Food for Thought notified Sentinel of its losses, and sought reimbursement under the "Business Income," "Extra Expense," and "Civil Authority" provisions of the Policy. Id. ¶ 55. On April

3

23, 2020, Sentinel denied the plaintiff's claim. Id. ¶ 56. Food for Thought then brought this action for breach of contract, seeking declaratory relief and compensatory damages. Id. ¶¶ 83, 93. In Counts One and Two, Food for Thought is seeking a declaratory judgment and damages for breach of contract pursuant to the Business Income coverage provisions of the Policy ("Business Income Claims"). In Counts Five and Six, Food for Thought is seeking a declaratory judgment and damages for breach of contract pursuant to the Extra Expense coverage provisions of the Policy ("Extra Expense Claims"). In Courts Three and Four, Food for Thought is seeking a declaratory judgment and damages for breach of contract pursuant to the Civil Authority provisions of the Policy ("Civil Authority Claims").

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Under New York law, "insurance policies are interpreted according to general rules of contract interpretation." Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 98 (2d Cir. 2012). Courts must "give effect to the intent of the parties as expressed in the clear language of their contract." Ment Bros.

Iron Works Co., Inc. v. Interstate Fire & Cas. Co., 702 F.3d 118, 122 (2d Cir. 2012). The insured party "bears the burden of showing that the insurance contract covers the loss." Morgan Stanley Grp. Inc. v. New Eng. Ins. Co., 225 F.3d 270, 276 (2d Cir. 2000).

The initial interpretation of a contract and whether its terms are ambiguous are questions of law for the Court to decide. See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006). Where contract terms are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business," the contract terms are ambiguous. Olin, 704 F.3d at 99. "[A]ny ambiguity must be resolved in favor of the insured and against the insurer." Parks Real Estate, 472 F.3d at 42.

On the other hand, policy terms are unambiguous where they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Olin, 704 F.3d at 99. "If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or

interpret its meaning." Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993); accord Int'l Multifoods Corp. v. Com. Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002); W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990). Contractual language "whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." Law Debenture Tr. Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010). Instead, each party's interpretation must be reasonable for the court to find ambiguity. Id. An interpretation is not reasonable if it strains the policy language "beyond its reasonable and ordinary meaning." Id. (citing Bethlehem Steel Co. v. Turner Constr. Co., 141 N.E.2d 590, 593 (N.Y. 1957)).

### III.

Sentinel moves to dismiss on the basis that Food for Thought has not alleged facts triggering coverage pursuant to the Policy's Business Income, Extra Expense, or Civil Authority coverage provisions.

### A.

Sentinel argues that the Business Income and Extra Expense Claims should be dismissed because the COVID-19-related closures do not constitute "direct physical loss" within the meaning of the Policy.

The Policy provides Business Income coverage for losses
sustained "due to the necessary suspension of" business
operations, when the suspension is "caused by direct physical
loss of or physical damage to property." Sentinel Policy at 36.
The Appellate Division of the New York State Supreme Court in
Roundabout Theatre Co. v. Cont'l Cas. Co., 751 N.Y.S.2d 4, 8
(App. Div. 2002), interpreted similar policy language. In that
case, New York City prohibited access to a midtown street after
a scaffolding collapsed, substantially damaging neighboring
property and creating a hazard in the area. Id. at 5. The
collapse caused minor damage to a nearby theatre that the
plaintiff theater company used. The damage was repaired within
one day, but due to the City's order, the theatre "became
inaccessible to the public and . . . was forced to cancel 35
performances of Cabaret." Id. The theatre company sought
reimbursement for monetary losses resulting from its "loss of
use" of the theatre under its insurance policy, which provided
coverage for "direct physical loss or damage to the property,"
and "loss of, damage to, or destruction of property or
facilities." Id. However, the Appellate Division held that the
insured was not entitled to coverage because physical damage to
the theatre did not cause it to suspend its business operations,
and the policy "clearly and unambiguously provide[d] coverage
only where the insured's property suffer[ed] direct physical

damage." Id. at 8. Thus, by concluding that the theatre's
business interruption coverage was "limited to losses involving
physical damage to the insured's property," the court rejected
the argument that "loss of" includes "loss of use" of the
insured premises. Id.

After Roundabout Theatre, courts applying New York law have
consistently concluded that loss of use of an insured's premises
does not trigger Business Income coverage when the policy
provides that such coverage requires evidence of physical damage
or physical loss. See, e.g., United Air Lines, Inc. v. Ins. Co.
of State of PA, 439 F.3d 128, 133 (2d Cir. 2006) (upholding the
denial of business interruption coverage to a commercial airline
that claimed lost earnings as a result of a government mandated
shutdown of air service following the September 11 terrorist
attacks because such coverage required evidence of physical
damage to the airline's property); Newman Myers Kreines Gross
Harris, P.C. v. Great N. Ins. Co., 17 F. Supp. 3d 323, 331
(S.D.N.Y. 2014) (finding no "direct physical loss or damage"
sufficient to trigger loss of business income where the insured
merely suffered loss of use of the premises because of a planned
power outage to mitigate harm caused by Hurricane Sandy); see
also 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.,
No. 20-CV-4471, 2020 WL 7360252, at *2 (S.D.N.Y. Dec. 15, 2020)
(dismissing the insured's claim for Business Income coverage for

9

"loss of the insured property" because the insured failed to allege facts to "plausibly support[] an inference that COVID-19 and the resulting Civil Orders physically damaged [the] property"); Michael Cetta, Inc. v. Admiral Indem. Co., No. 20-CV-4612, 2020 WL 7321405, at *5-*8 (S.D.N.Y. Dec. 11, 2020) (rejecting the insured's argument that its inability to fully use its insured property due to COVID-19-related government orders satisfies the loss or damage to property prerequisite of the business income coverage provision).

Moreover, the great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss. See, e.g., Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, London, No. 20-CV-2365, 2021 WL 131339, at *7 (E.D. Pa. Jan. 14, 2021) (granting the insured's motion to dismiss because "loss of use caused by government orders cannot constitute direct physical loss of . . . property"); Selane Prod., Inc. v. Cont'l Cas. Co., No. 20-CV-07834, 2020 WL 7253378, at *4 (C.D. Cal. Nov. 24, 2020) (holding the same because "[u]nder California law, losses from inability to use property do not amount to direct physical

loss of or damage to property"); Michael Cetta, Inc., 2020 WL 7321405, at *8 (collecting cases); see also ECF Nos. 43, 51-54.[2]

Accordingly, because Food for Thought alleges that it sustained Business Income losses when it lost the physical use of its property as a result of government-mandated closure orders, Food for Thought has failed to plead facts sufficient to establish that it suffered a direct physical loss of or physical damage to its property, within the meaning of its policy with Sentinel.

Food for Thought urges the Court not to follow Roundabout Theatre, arguing that the Appellate Division erred when it interpreted "direct physical loss of or physical damage" to property require evidence of physical damage to the insured property, because this interpretation failed to give the phrase "loss of" a distinct meaning from "physical damage." However, the Appellate Division rejected the argument that interpreting "loss of" to require more than "loss of use" rendered the phrase "physical damage" superfluous. See Roundabout Theatre, 751 N.Y.S.2d at 8. The Appellate Division reasoned that "'loss

---

[2] During oral argument, counsel for the plaintiff relied on a recent decision denying motions to dismiss and for summary judgment for the defendant concerning business income insurance coverage for losses resulting from COVID-19-related shutdowns. See In Re: Society Insurance Co. Covid-19 Business Interruption Protection Insurance Litigation, No. 20-CV-5965, 2021 WL 679109, at *9 (N.D. Ill. Feb. 22, 2021). In that case, however, the district court applied law from Illinois, Wisconsin, Minnesota, and Tennessee, and interpreted "direct physical loss of property" to include the loss of physical use of the covered property, id., which has been rejected under New York law. See Roundabout Theatre, 751 N.Y.S.2d at 8.

of' could refer to the theft or misplacement of [the insured's] property that is neither damaged nor destroyed, yet still requires the cancellation of [business operations]." Id. And other courts have observed persuasively that "loss of" could also indicate absolute destruction of the insured property, whereas "damage" implies a lesser, repairable harm. See Michael Cetta, 2020 WL 7321405, at *9.

The Appellate Division also explained that interpreting the policy to require physical damage to the insured's property was appropriate given that the policy only covered losses for the length of time required to rebuild, repair or replace the damaged property. See Roundabout Theatre, 751 N.Y.S.2d at 8. The court argued that the policy would be "meaningless" if it covered losses sustained because of off-site damage that resulted in "loss of use" of the insured property, because the insured "has no duty to repair a third-party's property." Id. The same argument applies here because Food for Thought's policy similarly limits coverage to losses sustained during the "period of restoration," Sentinel Policy at 36, which ends when the insured property "should be repaired, rebuilt or replaced," id. at 50. Thus, Food for Thought's arguments that Roundabout Theatre is inapplicable and should not be followed are unpersuasive.

Finally, Food for Thought argues that the likely presence of COVID-19 on its property satisfies the physical damage requirement for Business Income coverage. To support this argument, Food for Thought cites a few out-of-state cases that "recognized that even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose." Studio 417, Inc. v. Cincinnati Ins. Co., 478 F. Supp. 3d 794, 801 (W.D. Mo. 2020) (citing Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 236 (3d Cir. 2002)). However, Food for Thought's reliance on these cases is erroneous for two reasons.

First, although the Western District Court of Missouri in Studio 417 held that the plaintiffs adequately alleged a direct physical loss by claiming that COVID-19 "attached to and deprived the [p]laintiffs of their property," central to this holding was the court's interpretation that "physical loss" includes "loss of use," which is contrary to New York law. See Studio 417, 478 F. Supp. 3d at 802. Where courts interpreted Business Income provisions to require evidence of physical damage, as required under New York law, alleging the presence of the virus at the insured's premises was inadequate to survive a motion to dismiss on this type of insurance claim. See, e.g., Sandy Point Dental, PC v. Cincinnati Ins. Co., No. 20-CV-2160, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020),

reconsideration denied, No. 20-CV-2160, 2021 WL 83758 (N.D. Ill.
Jan. 10, 2021) (granting the defendant's motion to dismiss
because given that "[t]he coronavirus does not physically alter
. . . [a] material dimension of the property," the plaintiff
"failed to plead a direct physical loss"); see also Social Life
Magazine, Inc. v. Sentinel Ins. Co. Ltd., No. 20-CV-03311
(S.D.N.Y. May 14, 2020), Tr. 5:3-4, 15:12-14, ECF No. 32
(denying plaintiff's motion for a preliminary injunction because
"New York law is clear that this kind of business interruption
needs some damage to the property to prohibit" its access, and
observing that the coronavirus "damages lungs," not "printing
presses").

    Second, unlike in Port Auth. of New York & New Jersey,
311 F.3d at 236, where the plaintiff presented evidence of the
presence of asbestos in its buildings, Food for Thought only
speculates that the virus "likely infected" its premises and
relies on statements from Mayor de Blasio's executive orders
that the "virus physically is causing property loss and damage"
to support its allegation. Am. Compl. ¶¶ 27, 29. Mayor de
Blasio's statements are too general and unsupported by specific
facts to allege plausibly that Food for Thought's property was
damaged, and speculative allegations without factual support
cannot serve as a basis for a claim. See Iqbal, 556 U.S. at 678.
Moreover, contamination of the premises by a virus does not

14

constitute a "direct physical loss" because the virus's presence can be eliminated by "routine cleaning and disinfecting," and "an item or structure that merely needs to be cleaned has not suffered" a direct physical loss. Tappo of Buffalo, LLC v. Erie Ins. Co., No. 20-CV-754V, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020).

Accordingly, because Food for Thought has failed to allege facts showing that the suspension of its business operations was caused by a direct physical loss or physical damage, Counts One and Two of the Amended Complaint are dismissed.

Furthermore, because the Extra Expense coverage provision, like the Business Income coverage provision, requires that the insured suffer a "direct physical loss or physical damage," Sentinel Policy at 36, Food for Thought also failed to plead facts sufficient to establish that the Extra Expense provision was triggered. Accordingly, Counts Five and Six of the Amended Complaint are dismissed.

**B.**

Sentinel next argues that the Civil Authority Claims should be dismissed because the provision was not triggered by the COVID-19-related closure orders.

To trigger Civil Authority coverage under the Policy, 1) access to Food for Thought's premises would need to be "specifically prohibited by order of a civil authority," and 2)

15

the order would need to be a "direct result of a Covered Cause of Loss to property in the immediate area of [the insured] premises." Sentinel Policy at 37. The Policy defines "Covered Cause of Loss" as "risks of direct physical loss." Id. at 28. Because the Amended Complaint does not allege facts that plausibly establish these requirements, Food for Thought has failed to trigger coverage under the Policy's Civil Authority provision.

First, Food for Thought does not allege that civil authority orders "specifically prohibited" access to Food for Thought's premises. The Amended Complaint alleges that state and local executive orders closed "all non-essential businesses statewide," and cancelled "[n]on-essential gatherings of individuals of any size." Am. Compl. ¶¶ 24, 26. However, none of these orders "specifically prohibited" access to the plaintiff's property. In fact, Governor Cuomo's Executive Order that the plaintiff claims to have ordered the closure of "all non-essential businesses," id. ¶ 24, stated instead that "[e]ach employer shall reduce the in-person workforce at any work locations by 100%," N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8. This workforce reduction requirement does not amount to denial of access to the property. Unlike a situation, for example, of an unsafe condition at an adjoining building requiring a safety evacuation of a covered property, the owner

16

of the property could continue to access the property despite the total reduction in the workforce.

Food for Thought's allegation that the civil authority orders prohibited access to its "property for its intended purpose" is not enough to trigger the Civil Authority coverage provision. The Policy provides for coverage if the civil authority denies all access to the insured property, not simply its full use. Sentinel Policy at 37. Therefore, because no civil authority order denied complete access to the plaintiff's premises, the Amended Complaint fails to allege that access was "specifically prohibited." See Abner, Herrman & Brock, Inc. v. Great N. Ins. Co., 308 F. Supp. 2d 331, 333, 336 (S.D.N.Y. 2004) (interpreting a comparable Civil Authority provision to hold that the plaintiff was entitled to coverage only for the days following the September 11 attacks that civil authorities prohibited all pedestrian and vehicular access to Lower Manhattan, but ending once pedestrian access was restored, even though vehicular access remained restricted); see also Michael Cetta, Inc., 2020 WL 7321405, at *12 (dismissing a Civil Authority claim because the plaintiff did not allege that COVID-19 orders completely denied access); Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp., No. EF005750-2020, 2021 WL 609851, at *10-*11 (N.Y. Sup. Ct. Feb. 12, 2021) (same).

Second, the Amended Complaint fails to allege that the civil authority orders prohibiting access to the plaintiff's property were caused by risks of direct physical loss to property in the surrounding area. Instead, Food for Thought alleges that denial of access to its premises was "a direct result of the presence of the COVID-19 disease and the related actions of civil authorities." Am. Compl. 50. In other words, Food for Thought "was forced to close for the same reason as its neighbors – the risk of harm to individuals on its own premises due to the [COVID-19] pandemic." 10012 Holdings, Inc., 2020 WL 7360252, at *4. As the Supreme Court of New York explained when interpreting a similar provision, "the gist of Civil Authority coverage is that physical harm to someone else's premises has caused the civil authorities to prohibit access to the insured's premises." Visconti, 2021 WL 609851, at *12. In the case of COVID-19 civil orders, in contrast, "both premises are restricted for the same reason: to limit the risk of spreading the Covid-19 virus. This simply does not implicate Civil Authority coverage." Id.

Finally, Food for Thought has failed to allege that property in the surrounding area was physically damaged. Food for Thought relies on state and local government closure orders, and in particular a statement in Mayor de Blasio's executive orders that "the virus physically is causing property loss and

damage." Am. Compl. at 27, 29. But these generalized statements cannot serve as a substitute for a specific allegation that any property near the insured's premises was in fact damaged. As a result, such speculative assertions do not trigger Civil Authority coverage. See United Air Lines, 439 F.3d at 134 (denying a commercial airline Civil Authority coverage because a government-mandated shutdown of air service following the September 11 terrorist attacks "was based on fears of future attacks" and did not directly result from physical damage to adjacent properties); Michael Cetta, Inc., 2020 WL 7321405, at *11 (rejecting a restaurant's claim for Civil Authority coverage as a result of COVID-19-related governmental closure orders where the plaintiff "only vaguely allude[d] to the fact that the closure orders affected businesses besides itself"). Contamination by a virus not does constitute a "direct physical loss" that is required to trigger coverage. See Tappo of Buffalo, LLC, 2020 WL 7867553, at *4. Therefore, because Food for Thought failed to plead specific facts showing that the COVID restrictions that applied to the property at issue were the direct result of a risk of direct physical loss to other property in the immediate area, it has not shown entitlement to coverage under the Civil Authority provision.

Accordingly, Counts Three and Four of the Amended Complaint are dismissed.

19

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **granted.** The plaintiff has previously filed an amended complaint and has not asked for the opportunity to file a second amended complaint. Therefore, the Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close this case and to close all pending motions.

**SO ORDERED.**

**Dated:      New York, New York
            March 6, 2021**

_/s/ John G. Koeltl_
**John G. Koeltl
United States District Judge**

20